238 A.2d 750.

MAURICE PETITPAS *vs.* MERCHANTS MUTUAL INSURANCE
COMPANY.

FEBRUARY 26, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This is an action of trespass on the case for negligence to recover damages for injuries sustained in an automobile accident. It was brought under G. L. 1956, §27-7-2. That section permits an injured party to proceed directly against an insurer writing a property damage or personal injury liability policy if the process which originally issued against the insured has been returned "non est inventus" by the officer charged with its service. The case was tried to a jury in the superior court which found spe-

cially that the plaintiff had not made a good faith attempt to obtain service of process on the insured. Then, premised solely upon that finding and without reaching the merits of the case, the jury at the direction of the court returned a verdict for the defendant. After entry of judgment on the verdict, the trial justice granted the plaintiff's motion for a new trial and defendant appealed from that decision. The only substantial question is whether the trial justice erred when he set aside the verdict on the ground that it was contrary to "the greater weight of the credible evidence."

The testimony, on the critical question of plaintiff's good faith attempts to serve the insured, is not in conflict. The plaintiff's attorney twice sent to the Newport County sheriff a writ of summons naming the insured as the defendant. In each instance the writ was sent back endorsed substantially to the effect that due and diligent search had failed to locate the named defendant within the officer's precinct and that the process was being returned "Non Est Inventus." The officer who made those returns testified that the insured's home address, as furnished by plaintiff's attorney, had been verified with the local police; that he went several times to that address in an attempt to make service; that some of his visits were after dark when the house was illuminated; that although he rang the bell when he went to the residence nobody answered; and that he was unable to complete service.[1]

There was other testimony which tended to negate, rather than to affirm, plaintiff's good faith. It was offered by defendant and was substantially as follows: the insured owned his own home and had resided there continuously for approximately three years prior to the time when the sheriff attempted to serve the writs; his wife was a housewife, the

---

[1] At all pertinent times service of process could have been made "by reading the same to the person to be summoned, or by leaving an attested copy thereof with him, or at his last and usual place of abode with some person living there * * *." G. L. 1956, §9-5-26.

mother of two young children, and not gainfully employed; and at the time the writs were supposed to have been served he was, and for approximately five years prior thereto had been, employed as a civilian worker by the Navy in Newport.

The defendant's obvious purpose in presenting such negative testimony was to furnish a testimonial background from which the jury might reasonably deduce that plaintiff had not satisfied the good faith test which in *Collier* v. *Travelers Ins. Co.*, 97 R. I. 315, 197 A.2d 493, we found to be a precondition to permitting an injured party to proceed directly against an insurer. "Good faith," we said in that case at 321, 197 A.2d at 496, "connotes something more than the affirmative absence of fraud. It presupposes a reasonably diligent effort to obtain service on the insured such as would be made if no question of insurance were involved."

Within the frame of the factual setting we have described and in the light of the *Collier* holding, the trial justice charged the jury to find for defendant unless they were satisfied that plaintiff, through his attorney "* * * used due diligence in attempting to serve the owner or operator * * *" of the vehicle causing the alleged injuries. "Good faith," he defined as presupposing "* * * a reasonable diligent effort to obtain service on the insured * * * such as would be made, if no question of insurance were involved"; and he charged further that "* * * the due diligence which is part of the good faith obligation to be exercised by the Plaintiff or Plaintiff's counsel applies only to the Plaintiff. It does not apply to the due diligence of the Sheriff."

The jury, after having had the case under consideration for approximately 45 minutes, returned to the courtroom and addressed the following question in writing to the trial justice. "Could Mr. Mittleman [plaintiff's attorney] have served a Writ at Mr. Carvalho's [insured] place of employment. If no, why"?

Responding, the trial justice instructed:

> "There is nothing in the record to indicate the counsel for the Plaintiff knew the place of employment of Mr. Carvalho. There is nothing in the record to indicate that the Plaintiff or the Sheriff knew the place of employment of Mr. Carvalho. If, however, you should find that Mr. Mittleman could have discovered the place of Mr. Carvalho's employment, in the exercise of due diligence, then you may take that into consideration with all the other circumstances in determining whether or not the Plaintiff has exercised 'good faith' * * *."

The jury, after deliberating further, reported specifically that plaintiff had nòt exercised good faith in his attempts to obtain service of process on the insured. They also returned a general verdict for defendant.

In his brief bench decision granting plaintiff a new trial, the trial justice referred to the process which had twice issued for service upon the insured at his residence, commented upon the absence of any testimony evidencing that either plaintiff, his counsel, or the sheriff knew where the insured was employed, and concluded:

> "This Court feels that the greater weight of the credible evidence is against the jury's verdict. In the absence of any evidence that the Plaintiff's counsel or the Sheriff knew the place of employment of the named insured this Court feels that the special finding is against the weight of the credible evidence."

In our judgment, the trial justice's ruling was clearly wrong and is not, therefore, entitled to the great persuasive force it would otherwise receive from us.

He disapproved because he rejected the inferential rather than the testimonial evidence, and because he decided that it was unreasonable for the jury to infer that plaintiff's attorney could have discovered the insured's place of employment if he were as diligent as he would have been had there been no insurance. The fallacy with that conclusion is that the jury were not off on a frolic of their own when in

determining "good faith" they engaged in the inferential process, but were instead following the trial justice's instructions. He had charged them that an element for their consideration on that issue was plaintiff's failure either directly or through his counsel to ascertain the insured's place of employment. That instruction was not objected to and thereafter, as the law of the case, it was binding equally upon the judge in passing upon the motion for a new trial as it was upon the jury in resolving the factual issues. *Wilcox* v. *Henderson,* 90 R. I. 472, 159 A.2d 797.

It may well be that the trial justice, if free to draw his own inferences from the evidence, would have been inclined to reach a conclusion opposite to that arrived at by the jury. In the absence, however, of a showing that the selected inference lacked reasonableness or was less probable or natural than the one he preferred, the trial justice had no right to substitute his judgment on what inference should be drawn for the inference which the jury had already drawn. *Dawes* v. *McKenna,* 100 R. I. 317, 215 A.2d 235; *Allen* v. *Pepin,* 74 R. I. 144, 59 A.2d 349; *Somerset Realty Co.* v. *Shapiro,* 51 R. I. 417, 155 A. 360; *Redding* v. *Picard Motor Sales, Inc.,* 102 R. I. 239, 229 A.2d 762.

A further reason advanced by the trial justice for granting a new trial was that the argument of defendant's counsel to the jury was "highly prejudicial." If plaintiff believed he was prejudiced by defendant's argument to the jury, it was his obligation to object. If the trial justice then failed to cure whatever prejudicial effect might have resulted, plaintiff could now argue that his failure was reversible error. Improper argument, however, is not available as a ground upon which to base a motion for a new trial. *Olivieri* v. *Corsetti* 103 R. I. 5, 234 A.2d 117; *McGovern* v. *Lord,* 91 R. I. 392, 162 A.2d 799; *Floyd* v. *Turgeon,* 68 R. I. 218, 27 A.2d 330.

Having determined that the ruling on the motion for a

new trial was clearly wrong and therefore entitled to no weight on review, we followed the appellate rule and independently examined the record to ascertain if the evidence strongly preponderated against the verdict. We cannot say that it did and hence we approve the verdict.

The defendant's appeal is sustained, and the judgment appealed from is reversed.

*Abedon, Michaelson, Stanzler and Biener, Richard S. Mittleman,* of counsel, (for plaintiff-appellee).

*Martin M. Zucker,* (for defendant-appellant).