272 A.2d 691.

LEE RICHARD GILBERT, *p.p.a. et al. vs.* RAYMOND A. GIRARD *et al.*

JANUARY 20, 1971.

PRESENT: Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.   Lee Richard Gilbert, a minor, was severely injured when a motor vehicle in which he was riding as a passenger collided with another vehicle.   To recover for those injuries he brought this civil action in the Superior Court in the name of Ralph J. Gilbert, his father and next friend.   The father also sued in his own name for consequential damages.   Named as defendants were Raymond A. Girard, the operator of the motor vehicle in which Lee was a passenger; Del A. Girard, the owner of that vehicle and Raymond's brother; and Arthur and Mildred Girard, the parents of Raymond and Del.   Raymond's (the operator) negligence was not contested at the trial.   The issues were damages, and whether Del (the owner) and Arthur and Mildred, (Raymond's and Del's parents) were responsible for Raymond's negligence.   The jury resolved those issues in favor of the plaintiffs and returned verdicts of $100,000 in each case against each defendant.   After entry of judgments each defendant moved for a new trial in each case.   Raymond's motion was denied in the suit brought by Lee and was conditionally granted in Ralph's suit, unless he should remit all of the verdict in excess of $5,000; the motions of the other defendants were granted in each case.   The plaintiffs have appealed from the orders granting new trials to Del and to Mildred and Arthur.[1]   Raymond has not appealed.   Ralph remitted all of the verdict in excess of $5,000 in the suit against Raymond.

There is no substantial disagreement concerning the facts.   On the morning of August 7, 1966, Raymond, then

---

[1]Suit was also commenced against Allstate Insurance Company for recovery under the uninsured motorist clause of the father's automobile liability insurance policy. The operator and the parents, as third-party plaintiffs, brought Travelers Indemnity Company into the case as a third-party defendant. Prior to the trial the claims against the two insurance companies were severed from the primary action.

20 years old, with his parents' permission, used the family pick-up truck to go to work. The keys to that vehicle were on a key ring which also contained a spare set of keys to his brother Del's Mustang Ford automobile. Del had given his mother those keys so that she might use his automobile when the occasion demanded. Raymond returned home at about noontime, but did not return the key ring to his parents. About two o'clock that afternoon he decided to borrow Del's car which he had never driven before, and, indeed, had been forbidden to use. He walked a distance of about five miles from the family residence in Cumberland to the place in East Providence where Del was employed, and where he found Del's locked car in his employer's parking lot. Using the spare set of keys on the key ring he turned on the ignition and drove off. Early that evening he picked Lee up, and soon thereafter, while proceeding at a speed of between 85 and 95 miles per hour, collided with another automobile. Lee was severely injured. This litigation followed.

The defendants' motion for new trials in each case were filed more than seven, but less than ten, days after judgments. Plaintiffs initially argue that those motions were not timely because they were not *filed* within the seven-day time limitation fixed by G. L. 1956, §9-23-1, as amended by P. L. 1965, chap. 55, sec. 40.[2] They concede that a rule promulgated by the Superior Court establishing a time period different from that prescribed in §9-23-1, as

---

[2]Section 9-23-1, as amended, reads in pertinent part:

"*Except as otherwise provided by applicable procedural rules,* within seven (7) days after verdict any person or party, entitled to except or appeal in a cause or proceeding tried by a jury in the superior court, may *file* in the office of the clerk of said court a motion for a new trial * * *." (Emphasis supplied.)

amended, will prevail,[3] but they assert that the Superior Court has not provided by rule for *filing* a motion for a new trial. In their judgment the critical event in the claim for a new trial is the *filing* of a motion therefor in the office of the clerk, and for that reason they attach no significance to Super. R. Civ. P. 59 (b) which provides that a motion for a new trial shall be *served* upon the opposite party not later than 10 days after entry of judgment. Their argument completely ignores Super. R. Civ. P. 5(a) which, reversing prior practice, makes *service* of every paper in the case subsequent to the original complaint the primary act, and the *filing* thereof in the clerk's office secondary. 1 Kent, *R. I. Civ. Prac.* §5.1 at 63. That being true, the rule 59(b) ten-day period for *serving* a motion for a new trial supersedes the §9-23-1, as amended, seven-day *filing* period. In this case the motions for new trials, although not *filed* within seven days after verdicts, were *served* within ten days after entry of judgment and were therefore timely.

Turning from the procedural to the substantive we look first to the cases against Mildred and Arthur (the parents of Raymond and Del). In granting their motions for new trials the trial justice said that he would have directed verdicts in their favor if the appropriate motions had been made. In effect he was saying that nothing in the record, even when looked at in the light most favorable to plaintiffs, would support verdicts in their favor against Mildred

---

[3]The Legislature in granting the Superior Court rule-making power also provided that its rules would prevail over conflicting statutes. This is set out in G. L. 1956, §8-6-2, as amended by P. L. 1965, chap. 55, sec. 2, which, in relevant part, reads:

> "The superior court, by a majority of its members, may from time to time make and promulgate rules for regulating practice and conducting business therein. Such rules relative to practice and procedure, when effective, shall supersede any statutory regulations with which they conflict."

and Arthur. *D'Agostino* v. *Yellow Cab Co.,* 105 R. I. 28, 249 A.2d 87; *Romanelli* v. *A.B.C. Inc.,* 104 R. I. 689, 692, 248 A.2d 598, 600; *Ferreira* v. *McGrath Truck Leasing Corp.,* 104 R. I. 642, 647, 247 A.2d 842, 845. The plaintiffs, if they want us to disturb that decision, must first persuade us that the trial justice, in concluding as he did, either overlooked or misconceived material evidence on a controlling issue or was otherwise clearly wrong. *Dawson* v. *Rhode Island Auditorium, Inc.,* 104 R. I. 116, 242 A.2d 407; *Labbe* v. *Hill Brothers,* 97 R. I. 269, 197 A.2d 305; *Barbato* v. *Epstein,* 97 R. I. 191, 196 A.2d 836. They have not satisfied that burden.

The case against Del is more troublesome. There the jury were instructed that the critical issue was whether the motor vehicle in which plaintiff was riding was operated at the time of the accident with the owner's consent, express or implied. That instruction, given without objection, became the law of the case, and was as binding upon the trial justice when he decided the owner's motion for new trials as it was upon the jury in their deliberations. *Petitpas* v. *Merchants Mutual Ins. Co.,* 103 R. I. 479, 483, 238 A.2d 750, 752; *Roland Bileau Transp. Co.* v. *Lodie Brien, Inc.,* 100 R. I. 723, 727, 219 A.2d 401, 403.

In finding for plaintiffs the jury decided the consent question one way; the trial justice, who set aside the verdicts, resolved it otherwise. In his bench decision he observed "* * * there was no evidence whatsoever that the operator of the vehicle in question was operating with the consent of the owner." That observation completely ignored Lee's testimony, several times repeated, in which he quoted the operator as saying that he had his brother Del's permission to drive the automobile.[4]

---

[4]References to the transcript disclose the following colloquy:

"Q When you got into the car, did he [Raymond] say anything about how he happened to have the car?

That testimony as to agency, while material and relevant on the vital issue of consent, probably could have been excluded as hearsay evidence under the rule which says that the extrajudicial statements, admissions or declarations of one purporting to be an agent are inadmissible as against the principal to prove agency. *Mello* v. *Coy Real Estate Co.*, 103 R. I. 74, 78, 234 A.2d 667, 670; *Furlong* v. *Donhals, Inc.*, 87 R. I. 46, 53, 137 A.2d 734, 738; *Beaudette* v. *Cavedon*, 50 R. I. 140, 143, 145 A. 874, 875; *Martin* v. *St. Aloysius Church*, 38 R. I. 339, 357, 95 A. 768, 774. Notwithstanding that rule, Raymond's extrajudicial statements that he had his brother's consent were admitted without objection.

The question then is whether the inadmissible evidence as to agency, having been admitted without objection, thereby became competent and entitled to the same probative effect in the new trial proceedings as if properly admissible. An affirmative answer would mean that the trial justice, in deciding the motions for new trials, overlooked material evidence on the only disputed issue. That oversight would deprive his decision of the great weight it would otherwise be entitled to receive, and would require us to examine the record independently in order to discover for ourselves whether the evidence strongly pre-

---

"A Yes sir, he did. He said that his brother had let him borrow it."

In answer to another question Lee responded "Well, he looked up at me and I looked down at him and he waved to me and he said, 'My brother let me borrow the car' and he said 'How would you like to go for a ride.'"

And finally,

"Q When Del arrived at the front of your sister's home that night and you both went together in the car, did he say that he had permission to use — strike that — when Raymond arrived at your brother's house that night, did he say he had permission to use his brother's car or did he say he did not have permission to use it?

"A He said he had permission sir."

ponderates against the jury's verdict. *Landes* v. *Faella*, 106 R. I. 23, 28, 255 A.2d 724, 727; *Marcinko* v. *D'Antuono*, 104 R. I. 172, 187, 243 A.2d 104, 112. A negative answer, on the other hand, would mean in effect that his decision would go unchallenged.

Notwithstanding its decisiveness the parties neither briefed nor argued the question of the admissibility of Raymond's extra-judicial declarations or what consideration those declarations, if inadmissable, were entitled to receive by the trial court in passing on Del's motions for new trials or by this court in reviewing the trial justice's decision on those motions. In the peculiar circumstances of these cases we believe the interests of the parties require that they be afforded a full opportunity to examine the authorities[5] on the narrow but decisive question and to present their views thereon. Accordingly we reserve decision in the cases against Del. The plaintiffs may file an additional brief within 30 days, the defendant may within 20 days thereafter file a reply brief, and thereafter without necessity for further arguments those cases will be decided.

The appeals of the plaintiffs in the cases against Mildred and Arthur are denied and dismissed, and the judgments appealed from in those cases are affirmed. Decision on the appeals of the plaintiffs in their cases against Del is reserved pending filing of additional briefs by the parties.

ROBERTS, C. J., did not participate.

Motion to reargue denied.

---

[5] A collection of the authorities on the precise issue can be found at 79 A.L.R.2d 890. The attention of the parties is also directed to our own cases and particularly to *Empire Cream Separator Co.* v. *Parillo*, 47 R. I. 178, 127 A. 1; *Geremia* v. *Targlianetti*, 45 R. I. 197, 121 A. 121.

*Abatuno & Chisholm, Alfred G. Thibodeau,* for plaintiffs.

*Albert E. Tondreau,* for defendant Del A. Girard.

*Edward I. Friedman, Quentin J. Geary,* for defendants Arthur Girard and Mildred Girard.