HOMECRAFT BUILDERS, INC.

v.

Oscar SAMOS.

No. 79–341–Appeal.

Supreme Court of Rhode Island.

June 18, 1982.

Arcaro, Belilove & Kolodney, Samuel J. Kolodney, Providence, for plaintiff.

Kirshenbaum & Kirshenbaum, Alfred Factor, Van L. Hayhow, Providence, for defendant.

## OPINION

MURRAY, Justice.

The plaintiff, Homecraft Builders, Inc., brought this action in Superior Court against the defendant, Oscar Samos. The plaintiff claimed damages in the amount of $100,000 which included (a) $8,000, plus interest, lent to the defendant; (b) the unpaid balance owed for the renovation of the defendant's residence; and (c) reimbursement for the partial construction of an office building for the defendant. The defendant, in turn, filed a counterclaim against the plaintiff, seeking damages for the cost of repairs to a portion of the construction and for the increased cost occasioned by his subsequent hiring of another contractor to complete the office building.

After the trial, the jury denied defendant's counterclaim and returned a verdict of $37,572.75 for plaintiff. The defendant then moved for a new trial on all issues. The trial justice, finding that the verdict was excessive and that defendant's counsel had prejudiced his client, ordered a new trial on the issue of damages only. The plaintiff and defendant have both appealed to this court from the order of the trial justice.

In 1974, plaintiff performed several home-renovation projects for defendant and his wife at their residence in Cranston. Ralph N. Sweet (hereinafter referred to as "plaintiff"), the manager, sole stockholder, and officer of plaintiff corporation, testified at trial that defendant and his wife had agreed to pay $2,150 for the last of these projects. According to plaintiff, only $1,000 of this was paid, and defendant orally promised to include the remaining $1,150 in the price of a construction contract for a medical office building that defendant proposed to have plaintiff build in Pawtucket.

The contract entered into by the parties was the subject of lengthy, conflicting, and often confusing testimony. However, a careful review of the transcript reveals the essential elements of plaintiff's claim.

In September 1974, plaintiff borrowed a total of $8,000 which he in turn lent to defendant to enable him to meet the $23,000 purchase price of the land for the proposed office building. On September 30, plaintiff and defendant signed an agreement in which defendant promised to pay $100,000 for a one-story, L-shaped office building. Upon presentation by plaintiff of a written request for payment, a proportionate amount of the contract price was to be paid every two weeks, starting from the commencement of construction.

According to plaintiff's testimony, the actual construction costs and anticipated profit amounted to only $87,000. The remaining $13,000 was intended to reimburse plaintiff for (a) the $1,150 that defendant still owed for the renovations on his home; (b) the $8,000 loan by plaintiff to defendant for the purchase of the land for the office building; (c) any interest on that loan paid by plaintiff to the lending bank; and (d) a future renovation project at defendant's home. Regrettably, the parties failed to incorporate, or even to refer to, their understanding with respect to these points in the written agreement itself.

The difficulties between the parties began in earnest with plaintiff's inability to obtain a performance bond which was required by defendant's bank as a prerequisite to mortgage approval. This failure to obtain a bond caused defendant to experience difficulty in obtaining financing. According to plaintiff's testimony, defendant finally gave him a written waiver of the bond requirement. The defendant then instructed plaintiff to begin construction, despite plaintiff's warning that the lack of a performance bond might jeopardize defendant's chance of obtaining mortgage financing.[1] The defendant reassured plaintiff, promising that he would allow plaintiff to finance the construction if bank financing did in fact prove unobtainable. In return for plaintiff's financial assistance, defendant would then agree to form a corporation with plaintiff for the ownership as well as the construction of the building.

The plaintiff accordingly began construction and, after about two weeks had elapsed, he orally requested payment of $23,000. The plaintiff testified that this figure included the $8,000 loan and the unpaid $1,150 bill, as well as the cost of the work done and a portion of the anticipated profits and of the contingency fund.

The defendant, who was still experiencing difficulty obtaining financing, requested more time. During the next two weeks plaintiff frequently spoke to defendant about his need for payment; when about a month from the start of construction had expired, the difficulties between plaintiff and defendant came to a head. The build-

---

1. The plaintiff's prediction proved true. The defendant eventually obtained financing for the construction by giving a second mortgage on his home. Unfortunately, this occurred too late to resolve the dispute between the parties.

ing foundation had been completed, and plaintiff needed funds to purchase the materials to continue construction. The plaintiff testified that defendant again requested more time and repeated his promise to form a corporation with plaintiff for the ownership of the building if he could not raise the money in the next few days. The plaintiff further testified that defendant was not in fact able to pay within the specified time. Nevertheless, defendant reneged on his promise to give plaintiff an interest in the building in return for continuing construction at his own expense.

At this point, plaintiff notified defendant that he refused to proceed with the construction until he received payment. The plaintiff did, however, visit the construction site again in late November and noticed that the foundation was beginning to crack because of the onset of frost. He advised defendant that serious damage to the foundation would result if the floor and supports were not soon installed. The plaintiff testified that he was still waiting for payment in December when another visit to the site revealed that another contractor was at work. The plaintiff thereupon brought this action against defendant.

The testimony of defendant and his wife conflicts sharply with that of plaintiff in several essential respects. The defendant's wife denied owing $1,150 for home renovations and insisted that the $1,000 that she had paid plaintiff was the full agreed price. The defendant himself claimed that he knew nothing of the disputed $1,150 until plaintiff demanded payment of the $23,000 bill. Both defendant and his wife did, however, acknowledge having borrowed $8,000 from plaintiff.

The defendant also testified that although he did initially experience difficulty in obtaining financing, he had always intended to have plaintiff complete the construction. He only hired another contractor, Catallozzi Brothers Construction Company (Catallozzi Brothers), because of plaintiff's refusal to go back to work. The defendant further explained that he had re-

fused to make the $23,000 payment requested by plaintiff because he considered it excessive, not because he intended to terminate his contractual relationship with plaintiff.

The defendant testified that he paid Catallozzi Brothers $3,352.71 to repair the damaged foundation. Catallozzi Brothers also agreed to complete the construction for a price in excess of that agreed to by plaintiff. The testimony on this point is conflicting, but Richard Catallozzi testified that the price was $111,000 in addition to the cost of repairing the foundation. The repair cost and the increased amount of this second contract was the amount sought by defendant in his counterclaim.

In its verdict the jury specifically denied the counterclaim and returned a verdict for plaintiff in the amount of $37,572.75. The defendant then moved for a new trial on the ground that the verdict was against the law and the weight of the evidence.

At the hearing on defendant's motion, the trial justice commented unfavorably on the fact that defendant's trial counsel [2] contradicted his client's testimony by stating, during closing arguments, that the contract between plaintiff and defendant was for the amount of $87,000. The defendant had consistently testified that the price agreed upon was $100,000. The trial justice discussed this discrepancy at length:

"Now, why would counsel for the defendant take that position? The reason is obvious to the Court, and I'm certain it was obvious to the jury. Counsel took that position because his client the doctor had filed a counterclaim, and the doctor in his counterclaim was seeking damages from the plaintiff. Now, if the contract was for $87,000 as testified to by Mr. Sweet and as denied by the doctor in his sworn testimony, if the doctor prevailed in his counterclaim, the doctor would stand to profit by $13,000. Automatically he would pick up an extra $13,000. So it was in the best interests of defense counsel to take that position to the jury, al-

---

**2.** The defendant was represented by new counsel on appeal.

though it was in specific contradiction to the sworn testimony of the defendant himself. That argument was repeatedly made to the jury. Figures on the counterclaim were presented to the jury based on that $87,000 figure.

\* \* \* \* \* \*

*I am satisfied here that this jury could not, on the evidence before it, return a verdict in the amount of $37,572.75 unless it was punishing the Samoses for the conduct of their attorney."* [3] (Emphasis added.)

The plaintiff's appeal and defendant's cross-appeal both center on the correctness of the trial justice's ruling on the motion for a new trial.

The plaintiff contends that the verdict was well supported by credible evidence and should be allowed to stand. The defendant, on the other hand, asserts that the new trial ordered by the trial justice should not have been limited to the issue of damages.

The duty of a trial justice on a motion for a new trial is well established. The trial justice must make an independent review of the evidence in light of his charge to the jury and pass on the weight of that evidence and on the credibility of the witnesses. *Pray v. Narragansett Improvement Co.*, R.I., 434 A.2d 923, 931 (1981); *Taft v. Cerwonka*, R.I., 433 A.2d 215, 220–21 (1981); *Rossi v. Hall*, R.I., 430 A.2d 1072, 1073 (1981). If after this review the trial justice concludes that the evidence is nearly balanced or that reasonable minds could differ, he should approve the verdict, even despite doubts as to its correctness. *Fox v. Allstate Insurance Co.*, R.I., 425 A.2d 903, 907 (1981). *See also Rossi v. Hall*, R.I., 430 A.2d at 1074; *Cartier v. State*, R.I., 420 A.2d 843, 848 (1980). The ruling of the trial justice will not be disturbed unless he or she has misconceived or overlooked material evi-

dence, or was otherwise clearly wrong. *Pray v. Narragansett Improvement Co.*, R.I., 434 A.2d at 931–32; *Fox v. Allstate Insurance Co.*, R.I., 425 A.2d at 908.

We have carefully reviewed the record in this case in light of the aforementioned principles and conclude that the order granting a new trial on the issue of damages was in error.

In his ruling on defendant's motion, the trial justice stated:

"I am satisfied that Mr. Sweet was a very credible and honest witness. I believe Mr. Sweet. I believe the version that he gave to the jury, and I specifically reject the version as testified to by Dr. Samos. So that on the question of credibility, I want it clearly understood that I believe Mr. Sweet's testimony."

The trial justice felt, however, that the verdict was excessive, and he explained that he did not think that there was sufficient evidence on plaintiff's loss of profits. The trial justice concluded that the jury had punished defendant for the misconduct of his trial attorney by its returning an excessive verdict.

A review of the testimony and exhibits reveals, however, that the jury was in fact presented with evidence by both parties regarding plaintiff's loss of profit. The plaintiff testified that the anticipated profit for the entire contract was $27,000. The defendant's own expert witness, Richard Catallozzi, testified that anticipated profits in the construction industry at that time were often estimated at 20 percent of the cost of construction. It is clear then that the trial justice based his ruling primarily on what he viewed as the impropriety of defendant's trial counsel's having argued a position contrary to his client's testimony. In *Peloso v. Imperatore*, 107 R.I. 47, 50, 264 A.2d 901, 903 (1970), this court clearly stated that

---

3. In his counterclaim, defendant sought to recover the difference between $115,000 (the price of the second contract) and the amount of the original contract. If that total original amount was found by the jury to be $87,000 and not $100,000 as defendant himself had testified, then defendant's potential recovery on

the counterclaim would, of course, be $13,000 greater. The trial justice was indignant at what he viewed as the deliberate attempt by defendant's trial counsel to gain this extra amount by misrepresenting his own client's testimony to the jury during his final argument.

"the misconduct of counsel in the presence of a jury does not constitute a ground for a motion for a new trial." *See Petitpas v. Merchants Mutual Insurance Co.*, 103 R.I. 479, 483, 238 A.2d 750, 753 (1968); *Olivieri v. Corsetti*, 103 R.I. 5, 234 A.2d 117 (1967).

 The trial justice's reliance on improper argument by counsel as a ground for ordering a new trial is not in accord with existing law. In such a situation we are guided by the rule that

"when a trial justice has erred in his consideration of a new trial, either by way of commission or omission, we will examine the record to determine if it contains any competent evidence which, if believed, would support the jury's verdict." *Morinville v. Morinville*, 116 R.I. 507, 512, 359 A.2d 48, 51–52 (1976).

As the foregoing review of the record in this case demonstrates, there was ample competent evidence to support the jury's verdict. We must conclude, therefore, that the order granting a new trial on the issue of damages was in error.

In view of the above holding, we need not consider the claim, raised by the defendant in his cross-appeal, that a new trial should have been ordered on all issues.

The plaintiff's appeal is granted, and the defendant's cross-appeal is denied and dismissed. The order appealed from is vacated, and the case is remanded to the Superior Court with instructions to enter judgment on the jury's verdict.