264 A.2d 901.

GEORGE PELOSO *vs.* RALPH IMPERATORE.

APRIL 27, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.   This civil action to recover damages for personal injury was tried to a jury in the Superior Court, and a verdict was returned for the defendant. The plaintiff's subsequent motion for a new trial was granted, and the defendant is now in this court prosecuting an appeal from that decision.

It is not disputed that plaintiff's employer, Peloso, Inc., had contracted with the purchaser of a Navy surplus crane to dismantle and transport that crane from Quonset Point

Naval Air Station to a point in New Jersey. It appears that Peloso, Inc. had hired another crane, a mobile type of machine, for use in the dismantling of the surplus crane. At the time, this crane was being operated by defendant here, who had been employed by its owner to operate this crane for some 13 years.

The record discloses that plaintiff was an experienced "rigger," having been employed for some 22 years in the moving of heavy equipment. It further appears that defendant had been a crane operator with about 20 years' experience in the business of moving heavy objects. At the time the accident occurred it appears that defendant's crane had been attached by cables to the boom of the surplus crane at four points along the boom which had been designated by the manufacturer thereof as balance points. After attaching the cables to the boom of the surplus crane, the operator brought them up taut, the design being to prevent the boom of the surplus crane from moving in any direction when the bolts securing it to the frame were removed. It further appears that plaintiff had climbed aboard the surplus crane and had taken a position behind the boom thereof. He apparently was standing between the boom and the frame of the surplus crane using an air hammer to loosen the eight bolts which secured the boom to the frame.

Evidence had been adduced to the effect that, when an operation of this kind was in progress, the long-standing safety practice required the crane operator to remain at the controls thereof in order to do whatever would be necessary to prevent accidents or damage. However, it is not disputed that defendant operator had descended from the controls of the crane and climbed aboard the surplus crane. There is testimony that he was on the boom assisting plaintiff with the air hammer in the disengaging of the bolts that secured the boom to the frame. The testimony is in con-

flict as to whether plaintiff had asked defendant to leave the controls and come to the boom in order to help him remove the bolts. The plaintiff denies having asked defendant to leave the crane and, in fact, testified that he did not know defendant was on the boom and not at the controls.

When the last of the eight bolts was removed, the boom of the surplus crane turned or twisted somewhat and pinned plaintiff to the frame of the surplus crane. The evidence indicates that defendant thereupon jumped some 15 feet to the ground, climbed into the controls of his crane, lifted the boom from plaintiff's body, and hurriedly lowered it to the ground at a safe point some distance away.

The trial justice rested his decision to grant plaintiff's motion for a new trial on two grounds. Primarily, he granted the motion on plaintiff's contention that the verdict "* * * was motivated by sympathy or prejudice on the part of the jury." In the course of his decision he referred to certain questions asked of plaintiff by defendant's counsel at the trial as bringing "* * * to the attention of the jury that the Plaintiff received Workmen's Compensation." He referred also to questions asked of plaintiff concerning the identity of a physician by whom he had been examined and to defendant's production of a flying instructor as a witness who testified that he had given flying lessons to plaintiff after the injuries had been sustained. He went on to say, in substance, that defendant's counsel was an experienced lawyer who could have impeached the testimony of plaintiff without disclosing to the jury the fact that he had received workmen's compensation and that he had taken flying lessons.

It is clear that the trial justice concluded that the interrogation on the part of counsel for defendant constituted misconduct in the presence of the jury in that it was designed to enflame or prejudice the jury against plaintiff. We do not think that the evidence adduced in the course

of such interrogation was so prejudicial to plaintiff as to make the action of defendant's counsel amount to improper conduct in the presence of the jury. However, if it were, the short answer to the contention of plaintiff is that under our long-standing practice the misconduct of counsel in the presence of a jury does not constitute a ground for a motion for a new trial. *Olivieri* v. *Corsetti,* 103 R. I. 5, 234 A.2d 117.

In *Petitpas* v. *Merchants Mutual Insurance Co.,* 103 R. I. 479, 483, 238 A.2d 750, 753, we made it clear that improper argument "* * * is not available as a ground upon which to base a motion for a new trial." This rule, in our opinion, applies with equal force to other misconduct on the part of counsel in the presence of a jury, including interrogation designed to enflame or prejudice the jury. Where a line of interrogation is believed to have for its design the arousing of the passion and prejudices of the jury, counsel must, by objecting to such conduct and by making some proper motion, give the trial justice an opportunity to correct and mitigate the potential prejudice by a proper cautionary instruction.

In *McGovern* v. *Lord,* 91 R. I. 392, 397, 162 A.2d 799, 802, we pointed out that "* * * if plaintiff's counsel was of the opinion that defendant's argument was improper it was his duty to object, and if not properly cured by the trial justice he could take an exception and incorporate such exception in the bill of exceptions." In short, we look upon the rulings made by a trial justice with respect to alleged misconduct of counsel before a jury as raising a question of error of law, which under our practice cannot be reviewed by the trial justice, but must be brought before us after objection is made and a ruling is given thereon. We conclude, then, that it was error for the trial justice to grant a new trial on the basis that the

jury had been prejudiced and enflamed by the interrogation of defendant's counsel.

The trial justice appears also to have granted a new trial on the ground that the verdict of the jury for defendant was contrary to the weight of the evidence. In his decision he points out, in our opinion, correctly, that the record contains an abundance of evidence from which the jury could have found that defendant was negligent. However, he goes on to conclude that the record is barren of evidence upon which the jury could have found plaintiff contributorily negligent. With the latter we cannot agree.

He states that the evidence clearly discloses that it was the duty of defendant to remain in the cab of the crane while it was attached to the boom of the surplus crane with tension being maintained on the cables. He further points out that defendant does not deny that he had left the cab of the lifting crane and had climbed upon the boom of the surplus crane because plaintiff had told him that he needed help. We are compelled to conclude that the trial justice overlooked or misconceived testimony to the effect that defendant had gone to the boom of the surplus crane at the request of plaintiff for help and that, while defendant was on the boom, he was in fact helping plaintiff with the air hammer. It would appear, then, that the jury could well have found that plaintiff's request of defendant for help with the air hammer in the circumstances was conduct not reasonably designed to secure his own safety.

The trial justice also refers to what appears to be an undisputed fact, that is, that attached to the boom of the surplus crane was some cable that would throw it off balance when it was disengaged from the frame of the surplus crane. He takes the position that from the evidence it was the duty of defendant to check the boom for attachments which would throw it off balance. He again ap-

pears to overlook conflicting testimony, first, that defendant did not become aware of the fact that the cable was running through the surplus boom until after the accident had occurred. Also he apparently overlooked testimony as to the experience of plaintiff as a rigger in charge of preparing heavy objects for transportation and that the jury might well have found him contributorily negligent in not checking the boom for such attachments on his own.

We are persuaded that the evidence was in conflict on the issue of plaintiff's want of due care for his own safety, particularly in asking defendant to leave the cab and to assist him with the air hammer. It also might well have found contributory negligence in the fact that he continued to work on the disengagement of the boom knowing that defendant had left the cab of the crane. Along with this is the jury question as to whether plaintiff was in the exercise of reasonable care for his own safety when he failed to check the boom for attachments which might throw it off balance when disengaged.

We have consistently held that on a motion for new trial it is the obligation of the trial justice to determine, in an exercise of his independent judgment, the weight of the evidence and the credibility of the witnesses. Where it appears to him, after complying with this obligation, that the situation is one in which the conflicting evidence on the issue of liability is so evenly balanced that reasonable men might well draw different conclusions therefrom, he is without any right to substitute his judgment for that of the jury and his prime duty is to deny the motion for new trial and leave the verdict undisturbed. *Dawson v. Rhode Island Auditorium, Inc.,* 104 R. I. 116, 242 A.2d 407. Of course, where the evidence is not so evenly in balance and the trial justice is satisfied that a fair preponderance of the evidence is contrary to the verdict, he is

then required to sustain the motion and set the verdict aside. However, where he finds that the evidence is in balance and that the inferences drawn therefrom by the jury are reasonable and probable, he is not to draw inferences on his own from the evidence contrary to those of the jury and this even though he might be inclined to reach conclusions contrary to those of a jury. *Petitpas* v. *Merchants Mutual Insurance Co., supra.*

We are constrained to conclude, after examining the transcript here, that the evidence does not strongly preponderate against the verdict, and in those circumstances under the appellate court rule that verdict must stand.

The defendant's appeal is sustained, and the decision appealed from is reversed.

*Gunning & LaFazia, Raymond A. LaFazia,* for plaintiff.

*Keenan, Rice, Dolan & Reardon, John T. Keenan,* for defendant.