George PELOSO

v.

Ralph IMPERATORE and Rhode Island Sand & Gravel Co., Inc.

v.

The TRAVELERS INDEMNITY COMPANY.

No. 78–441–Appeal.

Supreme Court of Rhode Island.

Sept. 4, 1981.

Hanson, Curran & Parks, David P. Whitman, Gary Yesser, Providence, for Rhode Island Sand & Gravel Co., Inc., third-party plaintiff.

Rice, Dolan, Kiernan & Kershaw, James A. Currier, Providence, for The Travelers Indem. Co., third party defendant.

## OPINION

MURRAY, Justice.

This Superior Court civil action is before us on appeal and cross-appeal. The third-party plaintiff, Rhode Island Sand & Gravel Co., Inc. (RIS&G), seeks judgment against the third-party defendant, the Travelers Indemnity Company (Travelers), for the costs incurred by RIS&G in the defense of the suit brought against it by George Peloso, the plaintiff in the primary action. After a jury-waived trial, the trial justice ruled that Travelers was liable to RIS&G for five-eighths of the total cost of defense.[1] Travelers then moved for a new trial or, in the alternative, for an amendment of the judgment under Rule 59(a)(2) and (e) of the Superior Court Rules of Civil Procedure so as to include in the apportionment the expenses it had incurred in defending Ralph Imperatore (Imperatore), RIS&G's codefendant in the original action. This motion was denied, and Travelers appeals from both the judgment incorporating the trial justice's decision and the denial of its motion under Rule 59. Rhode Island Sand & Gravel Co., Inc. in turn filed a cross-appeal.

---

1. The remaining three-eighths of the costs was found to be the proportionate share of the liability of American Employers Insurance Company (Employers), which was found to have provided coverage concurrently with Travelers.

Because this case has involved multiple parties, extensive litigation, and a fairly complex insurance-coverage problem, we shall discuss in detail the facts as found by the trial justice[2] and the procedural history of this case.

In 1965 the original plaintiff, George Peloso, was injured in the course of his employment with Peloso, Inc. (Peloso). The plaintiff was crushed by a surplus crane boom while it was being loaded onto a trailer truck owned by Peloso. The loading operation was being performed through the use of a truck crane owned by RIS&G, operated by its employee, Imperatore, and leased to Peloso.

In the original complaint filed in May 1967, George Peloso sued Imperatore for injuries sustained as a result of his negligence. In May 1968, plaintiff amended the complaint to add RIS&G as a party-defendant. Rhode Island Sand & Gravel Co., Inc.'s subsequent motion for a separate trial on the issue of the statute of limitations was granted in September 1968.

After a jury trial in September 1968, judgment was entered in favor of defendant Imperatore. When plaintiff's motion for a new trial was granted, Imperatore appealed to this court. In *Peloso v. Imperatore*, 107 R.I. 47, 264 A.2d 901 (1970), we sustained Imperatore's appeal and reversed the decision below.

Rhode Island Sand & Gravel Co., Inc. met with similar success. In November 1972, the trial justice granted RIS&G's motion for a directed verdict, and plaintiff's subsequent appeal was dismissed by us in *Peloso v. Rhode Island Sand & Gravel Co.*, 114 R.I. 232, 330 A.2d 900 (1975).

Both Travelers and Employers maintained the position vis-à-vis RIS&G that there was no coverage and, therefore, no duty to defend. Consequently, the dispute now before us concerns the legal fees incurred in the defense of RIS&G. (In its motion to amend, Travelers seeks also to draw into the controversy the costs it in-

curred in defending Imperatore.) In June 1972, RIS&G filed a third-party complaint against Travelers, seeking payment of the legal fees RIS&G incurred in defending the original suit. In September 1978 the trial justice entered judgment finding Travelers liable for five-eighths of RIS&G's costs, and it is this judgment that is the basis of the appeal and cross-appeal now before us.

At the time of the accident Peloso was covered by a comprehensive automobile liability insurance policy issued by Travelers. The bodily-injury provision, coverage A, contains the following agreement:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile."

The definition of "insured" in the Travelers policy includes not only the named insured (Peloso) but also "any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission * *." The policy further provides that "[u]se of an automobile includes the loading and unloading thereof."

The truck crane owned by RIS&G was covered under a policy issued by American Employers Insurance Company (Employers). This policy contained two bodily-injury provisions, coverages A and B, the applicable coverage to be determined by whether or not the injury liability arose from the ownership, maintenance or use of an automobile. Coverage B (liability not arising from the ownership, maintenance or use of an automobile) is subject to a clause which specifically excludes coverage for the "ownership, maintenance, operation, use, loading or unloading of * * * automobiles if the accident occurs away from * * * premises

---

**2.** The case was presented to the trial justice on the third-party complaint, the answer thereto, requests for admissions, the responses thereto, an agreed statement of facts, certain exhibits, and the testimony of the late Coleman B. Zimmerman, Esq.

[owned, rented, or controlled by the named insured] or the ways immediately adjoining."[3]

Both the Travelers and the Employers policies contain the identical promise to "defend any suit against the insured * * * even if such suit is groundless, false or fraudulent * * *." In his decision, the trial justice found that RIS&G was covered under Peloso's Travelers policy. This conclusion was based upon the above-cited definitions of the words "insured" and "use of an automobile" contained in the Travelers policy. The trial justice further held that the Employers policy covered RIS&G, its named insured, under coverage B. Based upon this finding of concurrent coverage of RIS&G, the trial justice's conclusion was that both Travelers and Employers had owed RIS&G a duty to defend. Since Travelers provided five-eighths of the total coverage, this was found to be its proportionate share of the liability for RIS&G's defense costs.

Three issues are presented for our consideration. The first is that of Travelers' duty to defend RIS&G. In its brief, Travelers attempts to deny that it was under such a duty. In support of this contention, Travelers relies heavily on the fact that RIS&G was not the *named* insured under the policy. This argument fails to recognize that the policy's promise to "defend any suit against the insured" plainly is not limited to the named insured.

█ As the trial justice correctly noted, the appropriate test for determining whether there exists a duty to defend was set forth by this court in *Flori v. Allstate Insurance Co.*, R.I., 388 A.2d 25 (1978), where we said that "an insurer's duty to defend hinges not on whether the insured may ultimately be liable, but on whether

the complaint in the underlying tort action alleges facts and circumstances bringing the case within the coverage afforded by the policy." *Id.*, 388 A.2d at 26 (*citing Angelone v. Union Mutual Insurance Co.*, 113 R.I. 230, 231, 319 A.2d 344, 345 (1974); *Grenga v. National Surety Corp.*, 113 R.I. 45, 48, 317 A.2d 433, 435–36 (1974); *Employers' Fire Insurance Co. v. Beals*, 103 R.I. 623, 632, 240 A.2d 397, 402 (1968); *Thomas v. American Universal Insurance Co.*, 80 R.I. 129, 133–34, 93 A.2d 309, 312 (1952)). The allegations of RIS&G's third-party complaint meet this test. Counts 6 through 11 claim coverage under the Travelers policy issued to Peloso by alleging the following situation: RIS&G was "using" (loading) Peloso's "automobile" (trailer) with the named insured's (Peloso's) permission. Since RIS&G alleged sufficient facts to qualify as an "insured" under the Travelers policy, the trial justice was correct in finding that Travelers, by the terms of its policy, had a duty to defend RIS&G in the original action. Travelers breached this duty and is liable for a portion of the defense costs incurred by RIS&G.[4]

The next issue, raised by RIS&G, is that of concurrent coverage and duty to defend. Rhode Island Sand & Gravel Co., Inc. agrees with the trial justice that Travelers had a duty to defend it. However, it disputes the finding that Employers was under the same obligation. After examining the policy issued by Employers to RIS&G, we conclude that the trial justice was correct in his finding.

█ Coverage A of the Employers policy related to liability arising out of the ownership, use, or maintenance of any automobile. The trial justice correctly determined

---

**3.** Coverage B originally referred to bodily injury arising from an accident. However, the reference, "and caused by accident" was later eliminated from the policy by endorsement.

**4.** Travelers disagrees with the inclusion of a certain portion of the legal fees in the final award. In his decision, the trial justice stated that it was agreed by a stipulation filed at his request that the cost of RIS&G's defense would be $11,564.08. We find no such stipulation in

the record. However, a finding of fact of a trial justice sitting without a jury is entitled to great weight and will not be set aside unless it can be shown to be clearly wrong or unless the trial justice misconceived or overlooked material evidence. *Citizens for the Preservation of Waterman Lake v. Davis*, R.I., 420 A.2d 53 (1980). We find support in the record for the disputed finding and, accordingly, will not disturb it on appeal. *Id.*

that this provision was inapplicable. The parties stipulated that RIS&G's truck crane was "blocked by outriggers" and "in a stationary position." The crane did not therefore come within the definition of the word "automobile" as stated in the policy.[5] *See State Farm Mutual Automobile Insurance Co. v. Farmers Insurance Co.*, 569 P.2d 1260 (Wyo.1977).

■ Coverage B, entitled "Bodily Injury Liability-Except Automobile", of the Employers policy does provide coverage despite RIS&G's reliance on subsection (d) of the "Exclusions" provision. The exclusion states that the policy does not apply

> "[u]nder coverages B and D * * * to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from [the] premises owned by or rented to or controlled by the named insured * * * (2) automobiles if the accident occurs away from such premises or the ways immediately adjoining * * *."

Despite RIS&G's arguments to the contrary, we agree with the trial justice's finding that this exception does not apply. Since the accident occurred on government property in Quonset, a section of North Kingstown, Rhode Island, it is true that the premises were not owned by, rented to or controlled by RIS&G, a Warwick, Rhode Island corporation. Yet we agree with the trial justice's finding that this exclusion does not apply. The key words in this exclusionary clause, insofar as this case is concerned, are "loading or unloading of * * automobiles". This language may reasonably be understood in one of two ways: 1) the loading or unloading of automobiles onto or off some means of transport or 2) the loading or unloading of goods onto or off *an automobile*. Under the first interpretation the exclusion is clearly inapplicable in the instant case since it was a crane boom, not an automobile, being loaded onto

Peloso's trailer. The second construction of the exclusionary language, upon which both parties and the trial justice appear to base their reasoning, seems, at first glance, to fit the case at hand: RIS&G was loading a crane boom onto an automobile (Peloso's trailer). However, careful examination of the policy as a whole leads us to the conclusion that even under this interpretation the exclusionary clause does not apply. Having determined that coverage A is excluded because RIS&G's crane was not an automobile at the time in question, we cannot logically or justly exclude coverage B as well because of the additional involvement of Peloso's trailer (an "automobile"). To exclude coverage B on this basis would result in an inequitable, even absurd, interpretation of the policy. The trial justice pointed out that RIS&G's construction of the exclusion provision "would require the Court to hold that RIS&G had no coverage in the hypothetical case of a passerby on the public highway being struck and injured by the boom of the power crane, while being used on blocks (not loading or unloading). Such a position is untenable."

It is well established that an insurance policy should be examined in its entirety, *Factory Mutual Liability Insurance Co. of America v. Cooper*, 106 R.I. 632, 262 A.2d 370 (1970); *Nagy v. Lumbermens Mutual Casualty Co.*, 100 R.I. 734, 219 A.2d 396 (1966), in order to determine the intent of the parties and, if possible, to give it effect. *Id.* Using precisely this test, the trial justice analyzed the provisions, as endorsed, of the Employers policy, together with the exceptions and premiums charged. He properly concluded that the parties had intended that the power crane be fully covered when an "automobile" (coverage A) and when in a fixed and stationary position (coverage B). Even if the intent of the parties were to be considered unclear, the result here would not differ. Where the language of an insurance policy is capable of more than

---

5. The employers policy, condition 2, entitled "Definitions", provides:

"The following described equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation or while being operated solely for locomotion, but not otherwise: if of the non-crawler type, any power crane or shovel * * *."

one reasonable construction, the language will be construed strictly against the insurer. *Goucher v. John Hancock Mutual Life Insurance Co.*, 113 R.I. 672, 324 A.2d 657 (1974); *Ricci v. United States Fidelity and Guaranty Co.*, 110 R.I. 68, 290 A.2d 408 (1972); *Factory Mutual Liability Insurance Co. of America v. Cooper*, 106 R.I. 632, 262 A.2d 370 (1970).

■ Relying upon his finding of concurrent coverage of RIS&G by both Travelers and Employers, the trial justice found Travelers liable for only five-eighths of the cost of RIS&G's defense.[6] Notwithstanding RIS&G's arguments to the contrary, we hold that it is proper to prorate defense costs between concurrent insurers, when, as in the instant appeal, both insurers have wrongfully refused to defend an insured. In *Marwell Construction, Inc. v. Underwriters at Lloyd's, London*, 465 P.2d 298 (Alaska 1970), in which the facts are similar to those of the instant case, the Supreme Court of Alaska affirmed the trial court's decision to prorate defense costs and explained that it did not wish to promote a rule whereby "[t]he insurer who wrongfully breached its duty to defend would be awarded a bonus for having done so, by having another company bear the entire cost. * * * A breach of the obligation to defend should not be encouraged by a rule under which there is everything to gain and nothing to lose." *Id.* at 313.

The final issue before us concerns the denial of Travelers' motion for a new trial or, in the alternative, for an amendment of judgment pursuant to Super.R.Civ.P. 59(a)(2) and (e).

Travelers based its motion on the fact that it undertook the successful defense of Imperatore, RIS&G's crane operator and its codefendant in the original action. In so doing, Travelers incurred $4,217.65 in legal fees. Travelers now argues that if the trial justice prorated the cost of the defense of RIS&G, then a new trial or amendment of the judgment should be granted so as to force Employers to accept its proportionate share of these costs as well.

■ In *Colvin v. Goldenberg*, 108 R.I. 198, 273 A.2d 663 (1971), this court discussed the Rule 59(a)(2) motion for a new trial in jury-waived cases and established the following standard:

"We, therefore, hold that in a nonjury civil action where the trial judge decides both the law and the facts, he may grant as new trial only if he finds a manifest error of law in the judgment previously entered or if he is satisfied that the newly discovered evidence was not available at the first trial and is of sufficient importance to warrant a new trial." *Id.* at 208, 273 A.2d at 669.

In the case before us Travelers has failed to present any such evidence, nor has it brought to light any manifest error of law.

Travelers' reliance on Rule 59(e) is equally unfounded. In *Walker v. St. Laurent*, 103 R.I. 636, 240 A.2d 414 (1968), we recognized the purpose of Rule 59(e) to be the correction of obvious errors of law or of fact in the judgment. *Id.* at 639, 240 A.2d at 415. This is clearly not the case in the appeal now before us. Rather, the granting of this motion would have allowed Travelers to assert an independent claim against Employers, which, although found to have provided coverage, is nonetheless not a party to this action. The trial justice did not err in finding that Travelers' motion under Rule 59 was an improper method to assert such a claim.

Travelers further argues that its claim against Employers should be permitted as an omitted counterclaim under Super.R. Civ.P. 13(f) or even as a fourth-party complaint. However, these issues were not raised before the trial justice and will not be considered for the first time by this court. *Russell v. Kalian*, R.I., 414 A.2d 462 (1980); *Wickes v. Kofman*, R.I., 402 A.2d 591 (1979); *Aiudi v. Baillargeon*, R.I., 399 A.2d 1240 (1979).

---

**6.** The Travelers policy provided $500,000 and the Employers policy $300,000 of the total $800,000 available to RIS&G.

For the reasons stated, the third-party defendant's appeal and the third-party plaintiff's cross-appeal are denied and dismissed, the judgment and order of the Superior Court are affirmed, and the case is remanded to the Superior Court.

SHEA, J., did not participate.