March 14, 2025

**Supreme Court**

No. 2023-338-Appeal.
(PC 18-2237)

Alexandria Kazarian     :

v.     :

New London County Mutual Insurance  :
    Company et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Alexandria Kazarian　　　　　　　:

v.　　　　　　　　　:

New London County Mutual Insurance　:
　　Company et al.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.** The plaintiff, Alexandria Kazarian (plaintiff or Ms. Kazarian), appeals from a judgment of the Superior Court on a jury verdict in favor of the defendant, New London County Mutual Insurance Company (defendant or New London), in this negligence action involving a trip-and-fall accident in the vicinity of property owned by the defendant's insured. The plaintiff also appeals from the denial of her motion for a new trial. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that we may decide this case without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

## Facts and Procedural History

Ms. Kazarian filed a single-count complaint against defendant's insured, Irene Swiney (Ms. Swiney), after plaintiff's trip-and-fall accident in the vicinity of property owned by Ms. Swiney at 38 Gordon Street in Cranston, Rhode Island.[1] Ms. Kazarian subsequently amended the complaint to substitute New London as a defendant in place of Ms. Swiney after Ms. Swiney passed away. Ms. Kazarian alleged that on April 15, 2016, Ms. Swiney allowed a motor vehicle to be parked at her property in such a negligent manner that the motor vehicle obstructed the sidewalk and caused Ms. Kazarian to walk into the street and trip and fall over an unsecured gas cap.

A three-day jury trial commenced on May 17, 2023. Ms. Kazarian's first witness, Stephen Mulcahy, a traffic safety manager for the City of Cranston Department of Public Works, testified that sidewalk maintenance is the responsibility of the abutting property owner and that the city's parking ordinance prohibited vehicles from parking on the sidewalks.

---

[1] Ms. Kazarian also named as defendants Homeserve USA Energy Services (New England) LLC, d/b/a National Grid Energy Services (New England) LLC, Robert F. Strom, in his capacity as director of finance for the City of Cranston, and the City of Cranston, and her first amended complaint added Narragansett Electric Company as a defendant. However, New London was the only defendant at trial; Ms. Kazarian stipulated to the dismissal of all claims against Narragansett Electric Company d/b/a National Grid, Robert F. Strom, in his capacity as the finance director for the City of Cranston, and the City of Cranston.

The defendant thereafter called John Corso, a highway superintendent for the City of Cranston, to testify out of turn.[2] Mr. Corso testified that he had not received any complaints about a defect on Gordon Street around the time of the incident.

Portions of Ms. Swiney's January 17, 2019 deposition testimony were read into the record.[3] Ms. Swiney identified a red motor vehicle parked in front of her property, depicted in photographs, as belonging to her friend, Maria Gioielli, who visited Ms. Swiney almost daily and helped with household chores such as cutting the grass, opening a can, or turning a screw. Ms. Swiney testified that she permitted Ms. Gioielli to park her motor vehicle on the paved sidewalk in front of her property on various occasions and that she knew that other visitors parked there as well.

Ms. Kazarian testified about her recollection of her trip-and-fall accident on April 15, 2016. She said that she and her cousin went for an afternoon walk around the block near Ms. Kazarian's home; they were chatting and walking along neighborhood sidewalks before arriving at the corner of Gordon Street. Ms.

---

[2] A trial justice has discretion to control the mode and order of interrogating witnesses under Rule 611(a) of the Rhode Island Rules of Evidence.

[3] Ms. Swiney's deposition transcript was not admitted as a full exhibit at trial. As a result, the record does not indicate what particular parts of the transcript were read into the record. However, the parties have attached copies of the deposition transcript with redactions agreed upon prior to trial as exhibits to their papers submitted to this Court, and the transcript also appears as an attachment to plaintiff's memorandum in support of her motion for a new trial. Accordingly, we reference only the deposition testimony that both parties and the trial justice relied upon when addressing the motions for judgment as a matter of law and for a new trial.

Kazarian explained that, as they approached Ms. Swiney's property, she observed a red motor vehicle blocking the sidewalk; to get around the motor vehicle, plaintiff and her cousin walked in the street. In so doing, Ms. Kazarian testified, she stepped on a gas cap with her right foot, causing the cap to flip upwards and sending her "flying." Ms. Kazarian testified that she never saw the gas cap in the street, which was painted yellow with yellow arrows around it. Ms. Kazarian stated that she suffered a broken fibula as a result of the incident. Ms. Kazarian also testified that she saw the same red motor vehicle parked in the same area on Gordon Street approximately fifty times following the day of her fall.

The parties agreed to the admission into evidence of multiple photographs of Gordon Street and Ms. Swiney's property. On direct examination, Ms. Kazarian testified about a photograph depicting Ms. Gioielli's motor vehicle parked on the sidewalk in front of Ms. Swiney's property, stating that her husband took the photograph on the day of her trip-and-fall accident. During cross-examination, defense counsel questioned Ms. Kazarian about the photograph taken by her husband as well as other photographs (1) that depicted Ms. Swiney's property and (2) that both parties agreed were taken fourteen days after Ms. Kazarian's trip-and-fall accident. Defense counsel queried Ms. Kazarian about observable differences in the appearance of shrubbery depicted in various photographs and asked Ms. Kazarian how to account for the significant growth of a garden bush depicted in the

photographs within only ten days. Ms. Kazarian responded that that was beyond her expertise but maintained that the photograph taken by her husband was taken on the day of her fall. She also maintained that April 15, 2016, was a beautiful, sunny day, even though defense counsel questioned whether the photograph instead demonstrated that the road was wet.

Ms. Kazarian indicated uncertainty during her cross-examination testimony about another photograph that depicted the red motor vehicle parked on the sidewalk in front of Ms. Swiney's property, equivocating about whether it was also taken by her husband on the day of her fall. Furthermore, Ms. Kazarian's testimony on cross-examination revealed discrepancies in her prior statements relating to (1) the timing of the incident, (2) her activities after the fall and during her recovery period, and (3) her educational background.

The defendant rested, and plaintiff moved for judgment as a matter of law. Ms. Kazarian argued that Ms. Swiney was negligent in knowingly allowing Ms. Gioielli to obstruct the sidewalk in front of her property in violation of two city ordinances and in disregard of pedestrians. Ms. Kazarian also asserted that an unpaid, master-servant relationship existed between Ms. Swiney and Ms. Gioielli; as such, plaintiff contended that Ms. Swiney was liable for plaintiff's injury because it was suffered at the hands of Ms. Swiney's servant, whether done at Ms. Swiney's direction or in the course of the servant's employment.

The trial justice denied plaintiff's motion, explaining that it was within the purview of the jury to evaluate Ms. Kazarian's evidence and to determine the credibility of her testimony.

During closing arguments, defense counsel emphasized the observable differences in the appearance of shrubbery depicted in various photographs. Additionally, counsel for defendant made the following statement to the jury: "Imagine if this was your house, if someone did this. Would you find that you were accountable?"

Approximately one hour into deliberations, the jury asked whether they could see the transcript of Ms. Swiney's deposition testimony. Outside of the presence of the jurors, the trial justice proposed that he would explain that there was no redacted transcript, but that he could read portions of the testimony if the jury indicated exactly what they were looking for. Counsel for plaintiff suggested that the trial justice omit the word "redacted" from his response so that the jury "do[esn't] read in between the lines" and the trial justice agreed. Additionally, counsel for plaintiff said:

> "[M]y son indicated to me, you know when I was outside with him, that he recalled that when [defense counsel] was giving her closing that she indicated to the jury, as homeowners imagine if this happened to you, words to the effect. I don't know verbatim. But that was a point that he recalled."

The trial justice responded that he did not recall hearing the statement. He called the jury back into the courtroom and responded to their question as follows:

> "[P]ortions of the deposition were read. We don't have a redacted transcript, which means we do not have the parts that were not read and blocked out. * * * If you want portions of this read, we may be able to do that, it depends on how broad your question is."

The jury continued deliberating and returned shortly thereafter with a verdict in favor of defendant.

Ms. Kazarian filed a combined motion for a new trial and a renewed motion for judgment as a matter of law pursuant to Rules 50 and 59 of the Superior Court Rules of Civil Procedure. The plaintiff asserted that she needed only to prove that Ms. Swiney knew that the motor vehicle was parked on the sidewalk that day and that Ms. Gioielli had no reasonable necessity for doing so. Alternatively, plaintiff contended that, even if Ms. Swiney did not know that Ms. Gioielli parked on the sidewalk on the day in question, she was still responsible for plaintiff's injury under the doctrine of respondeat superior because Ms. Swiney and Ms. Gioielli engaged in a master-servant relationship. Ms. Kazarian also argued that a new trial was appropriate because (1) defense counsel violated the "golden rule" in her closing argument to the jury by asking them to put themselves in Ms. Swiney's shoes; (2) the trial justice used the word "redacted" in his response to the jury's question after agreeing not to, and thus "the response to the jury question may well have caused

- 7 -

misunderstanding with the jury producing a verdict that did not meet the merits of the controversy"; and (3) defense counsel's argument concerning "grass growth" was speculation and conjecture.

The trial justice issued a bench decision denying plaintiff's motion on June 8, 2023. He reviewed the evidence and testimony presented at trial and said that he questioned Ms. Kazarian's credibility as a witness; he ultimately determined that he would have come to the same conclusion as the jury. Addressing the violation of the golden rule, the trial justice explained,

> "I'm not sure if [an objection based on the golden rule] was raised on the record. [Counsel for plaintiff] said he didn't hear it. It was someone in the back who * * * heard it, a member of his family heard it and told him about it, hearing it. That's how I remember it being brought to the attention of the Court. Then why pray tell didn't anyone ask the stenographer, [who's] been sitting here[,] for a transcript? There is no transcript today to show that there was a problem, and as I indicated, I never heard it.

> "So if there was a violation, a transcript should have been submitted by now and there was time to correct it."

The plaintiff filed a timely notice of appeal on June 14, 2023. She assigns error to the trial justice's decisions denying her motions for judgment as a matter of law and a new trial and also argues that the trial justice erred by informing the jury that a redacted version of the deposition transcript was not available.

## Motion for Judgment as a Matter of Law

Ms. Kazarian argues that the trial justice erred in denying her motion for judgment as a matter of law, asserting that it was "uncontradicted" (1) that Ms. Swiney was aware that Ms. Gioielli parked her motor vehicle on the sidewalk and (2) that there was no reasonable necessity for Ms. Gioielli to do so.

We review *de novo* a decision denying a motion for judgment as a matter of law, and we are bound by the same rules and standards as the trial justice: We must view the evidence and draw all reasonable inferences in favor of the nonmoving party, without weighing the evidence or passing on the credibility of witnesses. *Dextraze v. Bernard*, 253 A.3d 411, 416 (R.I. 2021). "[I]f there is evidence supporting the nonmoving party or evidence on which reasonable minds can differ, the jury is entitled to decide the facts and the motion should be denied." *Gianquitti v. Atwood Medical Associates, Ltd.*, 973 A.2d 580, 590 (R.I. 2009) (quoting *Lutz Engineering Company v. Industrial Louvers, Inc.*, 585 A.2d 631, 635 (R.I. 1991)).

Our examination of the record reveals that reasonable minds could disagree on whether, in fact, Ms. Gioielli's motor vehicle obstructed the sidewalk on the afternoon of April 15, 2016, when Ms. Kazarian testified that she tripped and fell. Ms. Kazarian initially testified that she observed a red motor vehicle blocking the sidewalk when she and her cousin went for a walk on a sunny, beautiful afternoon. However, her testimony on cross-examination was somewhat equivocal when asked

about different photographs depicting Gordon Street and Ms. Swiney's property. Additionally, Ms. Kazarian made contradictory statements about the timing of her fall and other matters, and her cross-examination testimony could well have raised doubts about her veracity, particularly when considered in connection with the photographic evidence.

Ms. Kazarian argues that "[c]learly there were violations of numerous ordinances prohibiting parking on the sidewalk," when Ms. Gioielli parked her motor vehicle in front of Ms. Swiney's property while there to perform chores; and she further relies on *Brey v. Rosenfeld*, 72 R.I. 28, 48 A.2d 177 (1946), for the proposition that such violations, by Ms. Gioielli as Ms. Swiney's servant, constituted negligence because her obstruction of the sidewalk was unreasonable and unnecessary. Her argument is flawed for two primary reasons. First, Ms. Kazarian's reading of *Brey* ignores that it is generally the province of the factfinder to determine the reasonableness and necessity of a defendant's obstruction of a sidewalk. *Brey*, 72 R.I. at 34, 48 A.2d at 180 ("Ordinarily, whether defendant was temporarily making a reasonable and necessary use of the sidewalk is a question of fact and is to be determined in light of the circumstances of each case."). Second, her argument also ignores this Court's obligation to view the evidence, her entire testimony, and all reasonable inferences from that evidence and testimony in favor of New London, the nonmoving party, when we assess the propriety of the denial of her motion for

judgment as a matter of law. *Dextraze*, 253 A.3d at 416. In viewing the photographs, Ms. Kazarian's testimony, and all reasonable inferences as required, we are satisfied that the trial justice did not err in allowing the jury to decide whether a red motor vehicle blocked the sidewalk on the afternoon of April 15, 2016, and if so, whether that was a reasonable and necessary use of the sidewalk at that time. Accordingly, we perceive no error in the decision of the trial justice to deny plaintiff's motion for judgment as a matter of law.

**Motion for a New Trial**

We review a trial justice's decision on a motion for a new trial with deference. *Dextraze*, 253 A.3d at 416. "This Court will affirm a trial justice's decision on a motion for a new trial as long as the trial justice conducts the appropriate analysis, does not overlook or misconceive material evidence, and is not otherwise clearly wrong." *Zarembka v. Whelan*, 176 A.3d 485, 487-88 (R.I. 2018) (quoting *Bitgood v. Greene*, 108 A.3d 1023, 1028 (R.I. 2015)). "In considering a motion for a new trial, the trial justice sits as a super juror and is required to make an independent appraisal of the evidence in light of his or her charge to the jury." *Dextraze*, 253 A.3d at 416 (quoting *Letizio v. Ritacco*, 204 A.3d 597, 602 (R.I. 2019)). "If, after conducting this analysis, the trial justice concludes that the evidence is evenly balanced or that reasonable minds could differ on the verdict, she or he should not disturb the jury's decision." *Id*. (quoting *Letizio*, 204 A.3d at 602).

Ms. Kazarian argues that the trial justice erred in denying her motion for a new trial in light of statements made by defense counsel during closing arguments to the jury: (1) a golden rule argument and (2) what Ms. Kazarian characterizes as "a frivolous and baseless theory about 'grass growth.'" We consider plaintiff's arguments about each of these statements to the jury in turn.

### a. The Golden Rule Argument

On appeal, Ms. Kazarian refines an argument made to the trial justice as a basis for her motion for a new trial; in her papers filed in this Court, she quotes an excerpt of defense counsel's closing argument and argues that the trial justice erroneously overruled an objection based on a violation of the golden rule and failed to provide a cautionary instruction. Specifically, she cites the following statements by defense counsel during closing arguments: "It's your job to make sure that everybody in this case is treated fairly and reasonably. Imagine if this was your house, if someone did this. Would you find that you were accountable?"

We noted in *State v. Belen*, 220 A.3d 1224 (R.I. 2019), that "the Supreme Court of Connecticut has stated that a golden rule argument 'urges jurors to put themselves in a particular party's place or into a particular party's shoes.'" *Belen*, 220 A.3d at 1230 n.6. We have not had occasion to decide whether to adopt the "golden rule" doctrine, but we have long adhered to the requirement that "rulings made by a trial justice with respect to alleged misconduct of counsel before a jury

[raise] a question of error of law, which under our practice cannot be reviewed by the trial justice [on a motion for a new trial], but must be brought before us after objection is made and a ruling is given thereon." *Peloso v. Imperatore*, 107 R.I. 47, 50, 264 A.2d 901, 903-04 (1970).

We have thoroughly examined the transcript of the closing arguments to the jury in this case. Although defense counsel made the statements as quoted in Ms. Kazarian's papers before this Court, it is clear from our examination of the transcript that plaintiff neither objected contemporaneously nor requested a cautionary instruction prior to jury deliberations.[4] Ms. Kazarian has failed to preserve this issue for our review; we will not review a question of error of law, particularly one that invokes a doctrine not previously recognized in Rhode Island, when counsel did not timely object and the trial justice did not have the opportunity to provide a ruling regarding the alleged error. *Peloso*, 107 R.I. at 50, 264 A.2d at 903-04.

### b. The Grass-Growth Argument

Ms. Kazarian also argues that the trial justice erred in denying her motion for a new trial in light of defense counsel's references and allusions to "grass growth" that she contends amount to a "frivolous and baseless theory." She cites with specificity to the following statements by defense counsel: "And this is the

---

[4] Our close review of both the written motion for new trial and the transcript of the corresponding oral argument on the motion also reveals that plaintiff did not quote, cite to, or provide the trial transcript for consideration by the trial justice.

- 13 -

photograph that Ms. Kazarian wants you to believe was taken on the same day. And I don't know about you, but I don't think shrubs change that much in 15 days. It's just not going to happen. It can't happen and we all know that." Ms. Kazarian asserts that such argument was "baseless speculation and conjecture" in the absence of testimonial support by a lay or expert witness pursuant to Rules 701 and 702 of the Rhode Island Rules of Evidence, or in the absence of evidence that was admissible pursuant to Rule 901 of the Rhode Island Rules of Evidence.

However, Ms. Kazarian fails to articulate with any clarity how the trial justice erred in allowing references or allusions to "grass growth." Moreover, it is clear from our examination of the entire transcript of the proceedings below that Ms. Kazarian did not at any time object to any questions, statements, or arguments about "grass growth." As such, we deem the issue to be waived. *Peloso*, 107 R.I. at 50, 264 A.2d at 903-04.

We are satisfied that the trial justice conducted an appropriate analysis of plaintiff's motion for a new trial and cannot conclude that his decision to deny the motion was erroneous.

**Jury Instruction on Redacted Transcript**

Finally, Ms. Kazarian argues that the trial justice erred in using the word "redacted" when responding to a question from the jury, asserting that his use of the word was prejudicial. More specifically, she contends that jurors "came away with

- 14 -

the belief that what they had heard regarding Ms. Swiney's testimony was not the full testimony and that substantive portions had been left out."

We acknowledge that the trial justice used the word "redacted" when responding to a question posed by the jury amid deliberations, notwithstanding his initial agreement to refrain from doing so. However, Ms. Kazarian once again failed to object contemporaneously or otherwise put the trial justice on notice of her concern about the trial justice's use of "redacted" immediately after having done so. Furthermore, Ms. Kazarian references no legal authority in support of her contentions and she has again failed to articulate how the trial justice's use of "redacted" constitutes judicial error. Without any meaningful discussion of this issue, we deem it waived. *Broccoli v. Manning*, 208 A.3d 1146, 1149 (R.I. 2019).

Accordingly, we cannot conclude that the trial justice erred by informing the jury that a redacted version of Ms. Swiney's deposition transcript was not available.

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court on the jury verdict in favor of the defendant, and remand the papers to the Superior Court.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Alexandria Kazarian v. New London County Mutual Insurance Company et al. |
| **Case Number** | No. 2023-338-Appeal.<br>(PC 18-2237) |
| **Date Opinion Filed** | March 14, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Ronald J. Resmini, Esq.<br>For Defendant:<br><br>Lauren D. Wilkins, Esq. |