276 A.2d 471.

Town of Little Compton *vs.* Round Meadows, Inc. *et al.*

APRIL 30, 1971.

Present: Roberts, C. J.; Paolino, Powers, Joslin and Kelleher, JJ.

Kelleher, J. The defendant corporation is the owner and operator of a campground located in Little Compton on a five-acre parcel which abuts the Atlantic Ocean. In this civil action, the town seeks to enjoin the corporation

and its officers from allowing the parking of camper trailers on the corporation's property. The case was heard by a justice of the Superior Court. He denied and dismissed the plaintiff's complaint and this appeal followed.

The corporation, which is identified on a license issued it by the Rhode Island Department of Health as a "Family Camp Proprietor," purchased its land in August 1966. Clustered together on one portion of the tract are 76 cabins. Each cabin is permanently affixed to the land by cement block foundations or wooden pilings. The premises also contain a store and building containing sanitary facilities. The entire parcel is located in an area that is zoned for residential purposes. The town's object in bringing this suit is to prohibit the parking of camper trailers[1] along the oceanside on what appears to be the southeasterly portion of the parcel. While the town concedes that defendant corporation's property has been used as a campground for many years prior to its adoption of a zoning ordinance, it insists that the parking of the trailers cannot be considered as a legal nonconforming use, because of the corporation's failure to obtain a town license to operate a trailer camp and its neglect to obtain the certificate from the state Department of Health which would permit the campers to be parked on the land. The town also sought to base its

---

[1]The corporation's president distinguished a "camper trailer" from a "mobile home." The difference, he said, was registration and mobility. He testified that a camper trailer is registered with the Registry of Motor Vehicles and moves from camp to camp whereas a mobile home is not registered and remains at one location for a long period of time and serves as a permanent residence for its occupants. We have, for the purposes of this opinion, adopted the difference listed by this witness and have referred to the disputed vehicles as either camper trailers or trailers.

suit on[2] the corporation's alleged violation of the subdivision ordinance.

The trial justice ruled that the town's trailer-park ordinance was invalid because not only did it fail to conform with the enabling legislation but that it was without proper standards. He also found that the subdivision ordinance was inapplicable because of the simple fact that the five-acre parcel has never been subdivided. Before us, the town has conceded that the trial court's rulings were correct insofar as they pertain to trailer-park and subdivision ordinances. Nevertheless, it argues with great fervor that the corporation's rental of space to the trailer owners cannot be classified as a legal nonconforming use because the corporation did not obtain from the Rhode Island Department of Health the requisite permits which would authorize the rental of trailer spaces.

We have defined a nonconforming use as a particular use which does not conform to the zoning restrictions applicable to certain property but which use is protected against the restrictions, because it existed lawfully prior to the effective date of the zoning ordinance and has continued unabated since that time. *Town of Scituate* v. *O'Rourke*, 103 R. I. 499, 239 A.2d 176. In *O'Rourke* we referred to the diversity of judicial thought as to just what renders a pre-existing use unlawful. There are those who believe that a failure to obtain a license designed to regulate a certain activity on the land will not bar the land

---

[2]In entertaining this appeal, we note that this suit was instituted by the town solicitor on behalf of Little Compton. General Laws 1956, §45-24-6 specifically authorizes a suit to restrain a violation of a zoning ordinance. We find nothing that authorizes a municipality to seek injunctive relief for violations of its trailer park or subdivision ordinances. In the absence of some allegations of a nuisance or a threat to the public health, the town would have to resort to the penal sanctions contained in its ordinances. These observations are made lest it be thought that we are countenancing the resort to equitable powers of the Superior Court in any case where there has been a violation of some local ordinance.

from being classified as a legal nonconforming use. Others take the position that any unauthorized use of land or a business endeavor carried on in contravention of a law unrelated to zoning will prohibit a property owner from acquiring a legal nonconfroming use.

This court has yet to decide whether the noncompliance with a statute or ordinance unrelated to the use of land would prevent a nonconforming use from becoming operative. There is no need to make such a choice in the case before us.

The state statute relative to campgrounds is a licensing statute. The state issues its permit only after it is satisfied that there has been compliance with certain sanitary and aquatic safety regulations that have been promulgated by the Department of Health. This statute is applicable to all camping areas no matter what the zoning designation of the property involved. Such a law regulates the activity on the land, not the use of the land. *See, Hester* v. *Timothy*, 108 R. I. 376, 275 A.2d 637. Even if we were to assume that this court would adopt the view that the landowners' contravention of any licensing statute prevents him from acquiring a nonconforming use, the town's suit must fail.

In its efforts to show the illegality of the presence of the trailers, the town offered the testimony of a field supervisor for the Rhode Island Department of Health. This official testified that he had inspected the corporate property on July 10, 1969. There being compliance with the department's regulations, a license was issued authorizing defendant corporation to operate a camp having 76 sites. The 76 sites refer to the 76 cabins.

The town claims that, since the state license does not embrace the sites used by the trailers, such a use is illegal and should be prohibited. The plaintiff, however, overlooks the elementary principle that injunctive relief will not be granted to a litigant unless he establishes his right

to it. *Waldman* v. *Town of Barrington*, 102 R. I. 14, 227 A.2d 592. Here, the town assumed the burden of showing the illegality of the corporation's unquestionable nonconforming use. From the record, it is impossible to tell when zoning came to Little Compton. The ordinance introduced at the trial was enacted in May 1968. We are unable from that ordinance to tell whether it is the original ordinance or an amendment to a previous ordinance. This gap in the proof is insignificant. What is significant, however, is the inspector's testimony relative to the camper trailers. He testified that the state requires that a camper-trailer site be licensed only in the event the trailer is going to remain in camp for a period in excess of 72 hours. If its departure is scheduled within 72 hours of its arrival, there is no need for a permit. The town has failed to show that any of the camper trailers that have been positioned near the water's edge remained there for more than 72 hours. Indeed, one of the corporation officers declared that while trailer space can be rented on a seasonal basis, these vehicles come and go safari-like to various parts of the New England area. It is obvious that the trial justice refused to infer from that statement any conclusion that the trailers remained in the camp for periods in excess of 72 hours. We cannot fault him in this regard.

In a last-ditch effort to keep the trailers out of defendant camp, the town asserts that Rhode Island law does not countenance a nonconforming use of "bare land." In so doing, plaintiff directs our attention to G. L. 1956, §45-24-10 which reads as follows:

> "45-24-10. Pre-existing uses saved.—No ordinance enacted under the authority of this chapter shall prevent or be construed to prevent the continuance of the use of any building or improvement for any purpose to which such building or improvement is lawfully devoted at the time of the enactment of such ordinance."

The town points to the phrase "building or improvement" and then declares that since the parking area set aside for the trailers contains no "building or improvement," the southeasterly part of the parcel does not come within the shelter afforded by §45-24-10. In making this argument, the town cites nonconforming use provisions of the zoning enabling acts of other states wherein they specifically safeguard the existing use of buildings, structures and *land*.

The town, in making this contention, has misconceived the import of the term "improvement." It is a relative term whose meaning must be ascertained from the context and the subject matter of the instrument or writing in which it is used. *Wolff Chemical Co.* v. *Philadelphia*, 217 Pa. 215, 66 A. 344. Little Compton obviously believes that unless a person has placed some type of structure or fixture on his land, he may not have the benefit of a nonconforming use. This is simply not so. As used in §45-24-10, the term "improvement" describes land which has been converted from its natural state to a different state and condition for the use and enjoyment of man. As we view the statute, such an improvement may consist of vacant land that has been improved by some betterment such as cultivation, clearing, drainage, irrigation, grading or something which otherwise enhances the value or usefulness of the land. *See, Johnson* v. *Gresham*, 5 Dana 542 (Ky. 1837); *State ex rel. County of Ramsey* v. *Babcock*, 186 Minn. 132, 242 N.W. 474. Even if we were to adopt the town's split view of the five acres in controversy, it is clear that the trailers were used on that portion of the premises which can be described as an "improvement."

The plaintiff's appeal is denied and dismissed.

*Dolbashian, Chappell & Chace, Paul M. Chappell,* for plaintiff.

*Corcoran, Peckham & Hayes, Arthur W. Murphy,* for defendants.