## CITIZENS FOR PRESERVATION OF WATERMAN LAKE et al.

v.

### William DAVIS and John Coyne.

### No. 77–48–Appeal.

Supreme Court of Rhode Island.

Sept. 19, 1980.

Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Milton Stanzler, Lynette Labinger, Providence, for Citizens For Preservation of Waterman Lake et al.

Robert G. Flanders, Town Sol., Glocester, for plaintiffs.

James M. Shannahan, Robert C. Power, Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

This is a civil action heard before a justice of the Superior Court sitting without a jury. Judgments were entered for the defendants, William Davis (Davis) and John Coyne (Coyne). The plaintiffs appealed from the judgments to this court.

After hearing arguments and considering the briefs of the parties, this court concluded that the record submitted was such that we were unable to consider and review

properly the plaintiffs' appeals. We therefore remanded the case to the Superior Court directing that "the trial justice would be directed to implement his findings and set forth his reason for his ultimate ruling." *Citizens for Preservation of Waterman Lake v. William Davis* (Citizens I), R.I., 381 A.2d 1365, 1366 (1978). After further proceedings in the Superior Court, the plaintiffs' appeals were again docketed and considered by this court.

In September of 1974, the town of Glocester (the town) and Davis entered into a contract that, *inter alia*, granted Davis the right to use certain property as a commercial dump. This property, which Davis has designated as the Glocester Smithfield Regional Landfill (GSRL), is located partly in Glocester and partly in Smithfield. Shortly after Davis had begun to operate the GSRL dump under his contract with the town, he contracted with third parties to accept for disposal there refuse originating outside Glocester. Moreover, contrary to his representations to the then Department of Natural Resources [1] (DNR) and the Department of Health, Davis apparently deposited refuse in wetlands located on the GSRL property.

On May 29, 1975, Citizens for Preservation of Waterman Lake, plaintiffs, a nonprofit Rhode Island corporation, and several individually named persons,[2] filed the instant complaint. In its complaint, the Citizens group alleged, *inter alia* that Davis, in the course of operating the GSRL dump, violated the Fresh Water Wetlands Act (wetlands act), as enacted by P.L. 1971, ch. 213 § 1, now G.L. 1956 (1976 Reenactment) § 2–1–18 to § 2–1–25, by dumping trash and fill in a wetlands area without a permit; that he caused a nuisance to occur by polluting the waters of Nine Foot Brook, which is a tributary of Waterman Lake and which apparently runs through Glocester and Smithfield; that the trucks hauling refuse constituted a nuisance by virtue of the loud noise attending their operation; that Davis and Coyne conspired to violate certain ordinances of the town by permitting the disposal, within Glocester, of refuse originating outside Glocester; and that the September, 1974 contract between the town and Davis was illegal and invalid. The Citizens group prayed for injunctive and declaratory relief and for money damages. Prior to trial the town was permitted under Super.R.Civ.P. 24 to intervene as a plaintiff. In its complaint, as amended, the town alleged that Davis had breached the terms of the September, 1974 contract by disposing, at the GSRL dump, refuse originating outside Glocester, in violation of local ordinances. In addition, the town also claimed that Davis had violated the wetlands act. The town prayed for injunctive and declaratory relief. After hearing the claims asserted by the Citizens group and the town, the trial justice found for defendants on all issues; and judgments were entered accordingly.

■ To facilitate compliance with our mandate in *Citizens I,* the parties submitted a statement of stipulated findings of fact to the trial justice. In this appeal the Citizens group preliminarily have put into issue the effect that the stipulated findings of fact have upon additional evidence that the Citizens group specifically calls to our attention. An examination of the record clearly discloses that the parties agreed to be bound by the stipulated findings of fact which they jointly prepared. It also indicates that the additional evidence to which the Citizens group now refers in its briefs and oral argument was not part of the stipulated findings of fact but was presented by the Citizens group to the trial justice "for whatever weight or whatever determi-

---

1. The Department of Natural Resources has subsequently been reconstituted as the Department of Environmental Management. P.L. 1977, ch. 182 § 2.

2. Citizens for Preservation of Waterman Lake is a nonprofit Rhode Island corporation dedicated to preserving the ecology of Waterman Lake and its tributary waters. The persons individually named in the instant complaint are members of Citizens for Preservation of Waterman Lake and are landowners, residents, and taxpayers of either Glocester or Smithfield. The group of plaintiffs shall hereinafter be referred to as "the Citizens group."

nation and consideration he would give it * * *." Thus, to the extent that the findings and reasoning of the trial justice are inconsistent with the additional evidence, we are entitled to presume that he rejected it.

We shall now address the substantive issues raised in this appeal.

I

The first issue that we shall address is the contention put forth by the Citizens group and the town that the trial justice erred when he refused to enjoin Davis's dump operation until Davis had filed an application to alter wetlands in accordance with the wetlands act. The trial justice held that authority to enforce the wetlands act was exclusively vested in the DNR director and that neither the Citizens group nor the town had standing to enforce the wetlands act against Davis.

The Citizens group and the town contend that they are not attempting to enforce the wetlands act but that they are guaranteed certain rights under wetlands act and that they have a private cause of action for injunctive relief to secure those rights. See generally Cort v. Ash, 422 U.S. 66, 74–85, 95 S.Ct. 2080, 2086–91, 45 L.Ed.2d 26, 34–40 (1975). In particular, the Citizens group asserts that by virtue of § 2–1–22, plaintiff Freida S. Steere, whose property abuts wetlands located on the GSRL site, is entitled to notice and a public hearing before the DNR director on the question of Davis's alleged violations of the wetlands act. The town makes a similar claim. The Citizens group and the town argue that if they are not impliedly entitled to a cause of action for injunctive relief, then Davis may effectively frustrate their apparent rights under § 2–1–22 by refusing to file an application to alter wetlands. Additionally, the town asserts that it must have such a cause of action in order to effectuate its right under § 2–1–21 to review applications to alter wetlands. See generally Mills, Inc. v. Murphy, 116 R.I. 54, 64–67, 352 A.2d 661, 666–68 (1976). The town further asserts that the provisions of the wetlands act are an im-

plied term of its September 1974 contract with Davis, which it may enforce through injunctive relief.

■ It is well settled that when the language of a statute is clear and unambiguous, the statute may not be construed or extended but must be applied literally. Brier Mfg. Co. v. Norberg, R.I., 377 A.2d 345, 348 (1977); In re Shepard Co., 115 R.I. 290, 293–94, 342 A.2d 918, 922 (1975); Andreozzi v. D'Antuono, 113 R.I. 155, 159, 319 A.2d 16, 18 (1974).

■ Under the wetlands act all powers necessary to enforce its provisions are expressly vested in the DNR director. The director, in the first instance, determines which areas are to be designated as wetlands. Section 2–1–20.2. He has the authority to approve or disapprove applications, subject to the city or town wherein the area is located, for altering of wetlands. Section 2–1–21. He has broad powers to remedy any violation of the wetlands act. Sections 2–1–23 and 2–1–24. Significantly, he is authorized to obtain relief in equity or by prerogative writ whenever such relief is necessary to the proper performance of his duties under the wetlands act. Section 2–1–24. In view of the express statutory scheme of enforcement, we conclude that all enforcement powers are vested in the director. Moreover, nothing in the legislation indicates either expressly or implicitly an intent to create a remedy for a private citizen or a town or city to enforce the provisions of the wetlands act. Until the director acts, no other individual is authorized under the wetlands act to initiate any proceedings pursuant to the provisions of the wetlands act.

■ Similarly, we reject the town's contention that because existing law is a part of its contract with Davis, it may treat the wetlands act as a term of that contract which may be enforced through injunctive relief. We do not dispute the well–settled principle that existing law is an implied term of every contract. Sterling Engineering & Construction Co. v. Burrillville Housing Authority, 108 R.I. 723, 726, 279 A.2d

445, 447 (1971). This principle is, however, not applicable to the case before us. Neither is this a case in which we are called upon to construe an ambiguous contract; in such a case existing law is an extrinsic aid to discerning the contracting parties' intent, see, e. g., *Deerhurst Estates v. Meadow Homes, Inc.*, 64 N.J.Super. 134, 152, 165 A.2d 543, 552–53 (1960). Nor is this a case in which an existing statute expressly creates a specific obligation between the contracting parties; in such a case the "statute is as much a part of the contract as if the statute had been actually written into the contract," see, e. g., *Sterling Engineering & Construction Co. v. Burrillville Housing Authority*, 108 R.I. at 726, 279 A.2d at 447; see generally 17A C.J.S. Contracts § 330 at 299–300 (1963).

## II

The Citizens group and the town also challenge the trial justice's denial of their claims for declaratory and injunctive relief which were based on Davis's alleged violation of the local ordinances regulating refuse disposal. These ordinances, in substance, prohibited both dumping by persons who are not residents of Glocester and the dumping of refuse originating outside Glocester.

The Citizens group sought a declaration that the contract was invalid because it apparently authorized Davis to import and dispose of refuse in violation of the local ordinances prohibiting foreign–refuse disposal within Glocester. The town sought an injunction against such refuse importation and disposal and a declaration that such activity by Davis constituted a breach of its contract with Davis because the local ordinances were to be considered an implied term of the contract. The trial justice ruled, however, that the contract was valid and that even assuming Davis had violated the local refuse ordinances, the town did not have a right to injunctive relief. In support of his ruling the trial justice found that the contract could be performed in a lawful manner and that it was his duty to uphold it when, as here, there is no evidence

showing that the parties to the contract contemplated violating the ordinances at the time they entered into that contract.

 It is a well–established principle that if a contract can be performed legally, it will be presumed by a court that the parties intended a lawful mode of performance. *Redke v. Silvertrust*, 6 Cal.3d 94, 102, 490 P.2d 805, 810, 98 Cal.Rptr. 293, 298 (1971), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1316, 31 L.Ed.2d 583 (1972); *W. R. Hall Transp. and Stor. Co. v. Gunnison Mining Co.*, 154 Colo. 72, 76, 388 P.2d 768, 770 (1964); *Weiner v. Wilshire Oil Company of Texas*, 192 Kan. 490, 496, 389 P.2d 803, 808 (1964); *Tri–County Elec. Ass'n, Inc. v. City of Gillette*, 584 P.2d 995, 1005 (Wyo.1978). It is not to be assumed that parties enter into a contract contemplating an act amounting to a violation of the law but rather that they intend something for which they have the power to contract. It is clear, therefore, that the trial justice correctly determined the Citizens group's claim for declaratory relief.

 We agree also with the trial justice's denial of the town's claim for injunctive relief to remedy Davis's alleged violations of the refuse ordinances. We have several times made clear that in the absence of a cause of action at common law or a specific grant of authority, a town may not resort to the equitable powers of the Superior Court in every case in which there has been a violation of some local ordinance. Rather, the town must resort to the penal sanctions contained in the applicable ordinance. *Town of Glocester v. Olivo's Mobile Home Court, Inc.*, 111 R.I. 120, 122 n.1 300 A.2d 465, 466–67 n.1 (1973); *Town of Little Compton v. Round Meadows, Inc.*, 108 R.I. 478, 480 n.2, 276 A.2d 471, 473 n.2 (1971). The town does not contend that its claim falls within any of the exceptions to the general rule enunciated in the *Round Meadows* case and reaffirmed in the *Olivo's Mobile Home Court* case. Moreover, for the reasons discussed earlier in respect to the town's attempt to enforce the wetlands act against Davis under the guise of a contract action, we similarly reject the town's con-

tention that its contract with Davis serves as a means to circumvent the general rule. We will not permit the town to use its contract with Davis to enhance its rights under the local ordinance when its rights under the ordinance are limited strictly to a criminal action in the District Court.

### III

The Citizens group also alleged that Davis's dump operation had caused a nuisance by adulterating Nine Foot Brook and other waters, ponds, and marshes lying below the dump site. The Citizens group further claimed that the noise generated by the tractor–trailer trucks hauling refuse to the dump site amounted to a nuisance. The Citizens group sought money damages and injunctive relief in respect to these injuries. The trial justice, however, ruled that the Citizens group had failed to establish that they were entitled to such damages or relief. He found that the Citizens group had not adduced evidence sufficient to show that Davis's operation of a dump on his land constituted an unreasonable use or that the trucks hauling refuse to the GSRL site created an unreasonable amount of noise and that they failed to establish any injury or that any injury was caused by noise, odors, or contamination occasioned by Davis's operation of the dump.

When the parties have submitted their case to a trial justice sitting without a jury, the findings of fact of the trial justice will be given great weight and will not be disturbed on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. *Martineau v. King*, R.I., 386 A.2d 1117, 1119 (1978). Actionable nuisances fall into two classifications, public and private. A private nuisance involves an interference with the use and enjoyment of land. It involves a material interference with the ordinary physical comfort or the reasonable use of one's property. *Iafrate v.*

*Ramsden*, 96 R.I. 216, 221, 190 A.2d 473, 476 (1963). A public nuisance is an unreasonable interference with a right common to the general public: it is behavior that unreasonably interferes with the health, safety, peace, comfort or convenience of the general community. *Copart Industries, Inc. v. Consolidated Edison Company of New York*, 41 N.Y.2d 564, 568, 362 N.E.2d 968, 971, 394 N.Y.S.2d 169, 172 (1977); *see Radigan v. W. J. Halloran Co.*, 97 R.I. 122, 128, 196 A.2d 160, 163 (1963). The burden of proving a nuisance is upon the party alleging it, *see McClellan v. Thompson*, 114 R.I. 334, 344, 333 A.2d 424, 429 (1975); *Radigan v. W. J. Halloran Co.*, 97 R.I. at 128, 196 A.2d at 163, who must demonstrate the existence of the nuisance, *see DeNucci v. Pezza*, 114 R.I. 123, 329 A.2d 807 (1974); *Radigan v. W. J. Halloran Co.*, 97 R.I. at 128, 196 A.2d at 163, and that injury has been caused by the nuisance complained of, *McClellan v. Thompson*, 114 R.I. at 344, 333 A.2d at 429.

Noise in and of itself can be a nuisance only if it unreasonably interferes with a person's use and enjoyment of his property. *DeNucci v. Pezza*, 114 R.I. at 129, 329 A.2d at 810. The law does not attempt to impose liability in every case in which one person's conduct has some detrimental effect on another. Liability is imposed only in those cases in which the harm or risk to one is greater than he ought to be required to bear under the circumstances. 4 Restatement (second) Torts, § 822, comment g at 112 (1979).

In the instant case, the Citizens group failed to produce any evidence directly bearing on the amount of noise created by trucks under Davis's control. Moreover, the record is barren regarding evidence from which a court could reasonably determine the regular hours during which the trucks traveled to the dump site.[3] Under

---

**3.** In *DeNucci v. Pezza*, 114 R.I. 123, 329 A.2d 807 (1974), a central factor in the trial justice's decision to grant the plaintiff's claim for injunctive relief was that the defendant's trucks regularly made nighttime deliveries. The trial justice in *DeNucci* specifically found that noise attending deliveries made outside normal business hours was more offensive than the noise generated when the deliveries were made dur-

these circumstances we cannot say that the trial justice clearly erred when he found that the Citizens group had failed to adduce evidence sufficient to show that the noise from the trucks constituted a nuisance.

 With respect to the Citizens group's claim that the dump operation constituted a nuisance because it caused the contamination of waters, ponds, and marshes below the dump site, even assuming that obnoxious odors emanated from Nine Foot Brook, there is virtually no evidence establishing that such odors were caused by any actions on the part of defendant Davis. Similarly, even assuming that leached substances from the dump site contaminated the areas in question, the Citizens group did not establish that injury resulted. The record contains no evidence in support of the Citizens group's allegation that property values have depreciated as a result of the alleged nuisance. Moreover, any adulteration of the areas in question apparently has not caused permanent damage. By September 30, 1975, tests conducted by the Department of Health showed that the water quality conformed to the requirements of class–B waters, which is the designation of the waters in question. In view of the Citizens group's failure to produce evidence on the essential issues of causation, with respect to odors, and injury, with respect to the adulteration itself of the waters in question, we cannot say that the trial justice clearly erred in finding that the Citizens group had failed to show they were entitled to relief against the alleged nuisance.

### IV

 The trial justice also entered judgments in favor of Davis and Coyne in respect to the Citizens group claim that Davis and Coyne[4] had conspired to violate the town's ordinances governing refuse disposal. In its original appeal the Citizens group challenged these judgments. During the

proceedings on remand, however Coyne, pursuant to an agreement among the parties, was dropped as a defendant to this action. Thus, the Citizens group apparently acquiesces in the judgment in favor of Coyne in respect to its conspiracy claim. Under these circumstances, there can be no conspiracy in this case, see *State v. Fontaine*, 113 R.I. 557, 558–59, 323 A.2d 571, 572 (1974); *State v. McElroy*, 71 R.I. 379, 392–93, 46 A.2d 397, 403 (1946), and the judgment in favor of Davis must be affirmed.

The plaintiffs' appeal is denied and dismissed, the judgment entered for Davis is affirmed, and the case is remanded to the Superior Court.

---

ing normal business hours. *See id.* at 130, 329 A.2d at 811.

4. At the time defendant William Davis and the Town of Glocester negotiated and entered into the contract authorizing Davis to operate the

GSRL property as a commercial dump, defendant John Coyne was the president of the Glocester Town Council. In fact, Coyne executed the contract on the town's behalf.