DECISION
This matter is before the Court on plaintiffs' Motion for Declaratory and Injunctive Relief. Pursuant to Rule 65 (2) of Super. R. Civ. P, the hearing for the preliminary injunction was consolidated with the trial of this action on the merits.[1] Plaintiffs, the Attorney General and the Director of Environmental Management (DEM) seek: (1) a declaration that defendants have violated state environmental laws and that their property constitutes a public nuisance; and (2) injunctive relief requiring defendants to (i) cease any further state law violations; (ii) abate existing nuisance conditions; (iii) restore the subject freshwater wetlands; and (iv) remove the illegally deposited solid waste. In addition, the defendants bring a Motion in Limine to prevent the introduction of evidence that they claim was obtained as a result of an illegal search and seizure. The facts insofar as pertinent follow.
 Travel/Facts
The defendants, Robert A. Recchia Jr., and Tracey L. Recchia (hereinafter, collectively Recchia), own and operate a solid waste disposal facility located at 90 Mill Street (Assessor's Map 26, Lot 153) in the town of Johnston, Rhode Island. The Recchia's business contains approximately 58,333 cubic yards of solid waste, primarily composed of shredded construction and demolition debris.
By letter dated March 20, 2000, the DEM Office of Compliance and Inspection notified defendants that they were in violation of G.L. §23-18.9-5, which prohibits the disposal of refuse at other than a solid waste management facility licensed by DEM. Defendants were given ninety days from the date of said letter to properly dispose of the solid waste in question at an approved solid waste management facility. Following defendants failure to comply with the terms of the aforementioned notice, DEM notified defendants by letter dated July 20, 2000 of its intent to enforce relevant Rhode Island General Laws and DEM regulations.
The plaintiffs' filed the within complaint on August 4, 2000, and allege defendants are in violation of the following Rhode Island laws: (1) G.L. § 23-18.9-5 for disposal of refuse at other than a licensed facility and for the accumulation of solid waste in violation of the Rules and Regulations for compost facilities and solid waste management facilities; (2) G.L. § 2-1-21 for the alteration and/or destruction of freshwater wetlands without the authorization required by DEM; (3) Air Pollution Control Regulations No. 17 for the release of objectionable odors from the property; and (4) G.L. § 10-1-1 for the creation of a public nuisance due to the aforesaid accumulation of solid waste, and/or the release of objectionable odors, and/or the unlawful alteration of freshwater wetlands.
On August 9, 2000, after hearing, this Court granted plaintiffs' motion for temporary injunctive relief, prohibiting defendants from accepting any additional solid waste on their property until further order by the Court. In addition, the Court ordered defendants to hire a DEM approved, environmental response contractor to derive a plan and timetable for the abatement of the odor nuisance. The Consent Order further allowed DEM inspectors access to the site to monitor the odor abatement activities, without prejudice to defendants to later challenge the statutory authority permitting such access. However, the Order permitted DEM inspectors access to the site at any time while the environmental response contractors were present and during any exigent circumstances.
 The Plaintiffs' Evidence
This matter was heard before this Court on October 10 and 11, 2000. The plaintiffs presented a sundry of documentary evidence to prove defendants' alleged violations, including photographs, analytical testing data, field reports, medical affidavits, and samples of solid waste from the subject property. In addition, plaintiffs presented extensive testimony evidence from various DEM officials and inspectors as well as neighbors to the Recchia property.
The plaintiffs first witness was Tina Tessier, a resident of the Plainfield Valley Condominiums, adjacent to the Recchia property. Ms. Tessier testified that she experienced difficulty in breathing and sleeping due to overwhelming "rotten egg" odors emanating from the Recchia property during the Summer of 2000.
Additionally, plaintiffs presented the affidavits of Doctors Arnold Herman and Rochell Strenger (See Plaintiffs' Exhibits 18 and 20), who treated Tina Tessier during the Summer of 2000.[2] The doctors state that their patient complained of breathing and sleeping difficulties which exacerbated her recuperation from surgery, and eventually caused her to relocate elsewhere during this time. Both doctors expressed opinions that Ms. Tessier's health was adversely impacted due to the odors in her neighborhood.
The plaintiffs' second witness was Anne Pesaturo, also a resident of the Plainfield Valley Condominiums. She testified that the objectionable odors interfered with her breathing to the extent that she sought emergency treatment at a local hospital on more than one occasion. Ms. Pesaturo further testified that the odors prevented her from outdoor activities and that the odors forced her to evacuate her dwelling more than once.
The plaintiffs third witness was John Leo, a solid waste/hazardous waste inspector for DEM.
He testified that in response to odor complaints from the Recchias' neighbors, he investigated defendants' property on July 28, 2000. After said investigation, he prepared a "Field Inspection Report" (See Plaintiff's Exhibit 4), in which he traced the objectionable odors to the refuse on the Recchia property and detailed the results of tests performed on said debris that showed the material to be solid waste.
The plaintiffs' next witness was Don Squires, an Engineering Technician IV at DEM with an extensive background in solid waste management issues. Mr. Squires testified that he was first involved with the subject investigation in January, 2000, when he observed over 58,000 cubic yards of solid waste on the Recchia property consisting of wood wastes, plastics and glass. He further stated that during his inspection, two tractor-trailers arrived on the subject property carrying material to cover the solid waste. Mr. Squires photographed the subject area, and the truck dumping the cover material onto the solid waste. (See Plaintiffs' Exhibits 5 and 6). Mr. Squires again returned to the property on May 26, 2000, to follow up on his previous inspection, and again photographed the solid waste, as well as a truck dumping cover material onto this site. (See Plaintiff's Exhibit 7).
Mr. Squires further testified that he returned to the property on July 28, 2000, with John Leo, in response to hydrogen sulfide odor complaints. Mr. Squires and Mr. Leo left the premise after finding no one at home to obtain permission to take a sample from the subject property. The men then obtained permission from a neighbor to enter her land and to sample soil and liquid from this land that consisted of debris from the Recchia site which has spread to her property. Mr. Squires returned to the property later that day in an attempt to abate the hydrogen sulfide odors and applied sodium hypochlorite to temporarily neutralize these odors. (See Plaintiffs' Exhibit 8).
Mr. Squires again visited the property on August 24, 25, 26, 29, and 30th in response to a court-ordered temporary odor abatement plan. Mr. Squires returned to the property with a team of people on September 1, 2000 to take samples of the solid waste material extracted from test pits. (See Plaintiffs' Exhibits 9, 10, and 12). On September 8, 2000, Mr. Squires returned to the site to check the leachate collection system, which had been installed per court order to control the odors. On October 4 and 9, 2000, Mr. Squires conducted inspections of the stone dust cap over the debris pile, and concluded that it cracked and was apparently washing away into a nearby brook. (See Plaintiff's Exhibit 11).
The plaintiffs' next witness was Bruce Ahern, a DEM Senior Natural Resource Specialist with extensive experience as a Senior Biologist and Wetlands Specialist. He testified and indicated per affidavit, (See Plaintiff's Exhibit 13) that on July 20, 2000, he responded to complaints of alleged filling taking place on the Recchia property. The defendants were not at home when he arrived at the subject property, but someone was operating a tractor on the property. Mr. Ahern stated that he then approached the person operating the tractor and explained he was investigating a possible Wetlands Act violation. Mr. Ahern claims that the individual operating the tractor stated that he was caring for the Recchia property and raised no objection to his investigation. Mr. Ahern prepared a Complaint Inspection Report, Biological Inspection Report and Site Inspection Report, which all concluded, that unauthorized alterations of freshwater wetlands occurred on the Recchia property since 1995. Upon cross-examination, Mr. Ahern testified that even if Mr. Recchia claimed to use the property for agricultural purposes, he would not be exempt from the DEM authorization requirement prior to making any alterations to protected wetlands.
The plaintiffs' next witness was David Mello, an Environmental Inspector at DEM who testified that he personally checked and confirmed numerous complaints of objectionable odors in the area of the Recchia property.
The plaintiffs' next witness was Michael Mulhare, a DEM Supervising Sanitary Engineer, who was first involved with the Recchia investigation in the Spring of 1999. Mr. Mulhare personally visited the site in July 2000, and testified that he reviewed and agreed with numerous reports of DEM staff members which confirmed objectionable odors emanating from defendants' property. He also reviewed test results taken by John Leo (from the neighbor's land) and material samples and test results obtained by DEM pursuant to this Court's order. Mr. Mulhare stated that "construction and demolition debris typically causes the release of hydrogen sulfide." Based upon the aforementioned observations and reviews, Mr. Mulhare stated that it was his professional opinion, that the material deposited on the defendants' property constitutes solid waste and that it generated the objectionable hydrogen sulfide odors to the surrounding area. In Mr. Mulhare's affidavit (Plaintiff's Exhibit 15), he states his opinion to a reasonable degree of scientific certainty, that the test results from the sampling conducted on September 1, 2000, show that the material is "clearly a form of solid waste." Mr. Mulhare also stated that he had observed fissures as well as signs of erosion in the temporary cap over that debris, and that DEM received complaints of hydrogen sulfide odors from neighbors since the cap was installed. He concluded that the "[h]ydrogen [s]ulfide will continue to be generated" and the site "clearly does not meet the requirements for a licensed solid waste management facility."
The State's final witness was Robert Vanderslice, who is employed by the Rhode Island Department of Health, Office of Environmental Health Risk Assessment. Per affidavit, Mr. Vanderslice stated that he assessed the health risks associated with the hydrogen sulfide odors, and concluded to a reasonable degree of scientific certainty that the odors from the Recchia property are "adversely impacting the health of nearby residents."
Per affidavit, the plaintiffs' admitted testimony from Donna Ducknoworth, also a resident of Plainfield Valley Condominiums, who stated that the odors caused her to "become ill" and prevented her from enjoying outdoor activities during the Summer of 2000. Ms. Ducknoworth also stated that the placement of the temporary clay cap over the debris caused the odor to become less severe, but still prevalent on a regular basis and still objectionable.
 The Defendants' Evidence
Defendants' only witness was Thomas Nicholson, a professional civil engineer with extensive training in solid waste management and solid waste contaminations. He described the material found on the Recchia property to be benign. However, Mr. Nicholson admitted to having no training or expertise in wetlands.
Defendants proffered a total of five exhibits, comprised of an affidavit and receipt from the owner of a trucking business hired to haul material from the Recchia property to the Rhode Island Central Landfill (Exhibit A), the 1998 Annual Book of ASTM standards (Exhibit B), Standards Relating to Physical and Chemical Characteristics of Refuse Derived Fuel by ASTM (Exhibit C), Hazardous Material Table (Exhibit D), and a Material Safety Data Sheet (Exhibit E). The primary purpose of these exhibits was to prove that the material on defendants' property was not in fact solid waste.
Defendants refute the State's evidence with the legal argument of laches and by claiming that the evidence obtained by plaintiffs' in April 1999, January of 2000, and May of 2000 was obtained as a result of an illegal search in violation of defendants' Fourth Amendment rights. Thus, defendants claim that all evidence gained from these searches should be suppressed pursuant to G.L. § 9-19-25
 The Motion in Limine
The defendants filed a Motion in Limine on October 12, 2000, requesting the suppression of evidence obtained by plaintiffs from alleged unlawful investigations on the Recchia property in April 1999, January 2000, and May of 2000.
To determine whether a search is reasonable within the meaning of the Fourth Amendment, it is imperative to balance "the need to search against the invasion which the search entails." Rhode Island Defense Attorneys Ass'n v. Dodd, 463 A.2d 1370,1372, (R.I. 1983) (quoting Camara v. Municipal Court, 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930, 940 (1967)). Furthermore, it is essential to inquire about whether the challenged intrusion was reasonably related in scope to the circumstances that justified the interference in the first place. Id. at 1372 (citing Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889, 904 (1968)).
In April of 1999, prompted by neighbors' complaints, DEM investigator, John Ashton, observed apparent solid waste violations while he was in his vehicle on a roadway adjacent the Recchia property. From this vantage point, he claimed that he could observe piles of debris on the property and a man spreading this debris with a backhoe. He then entered the property and spoke with the defendant property owner. Upon leaving the property, Mr. Ashton measured the pile of debris but did not take any debris samples.
In January 2000, DEM investigator Don Squires was responding to possible continued improper disposals of solid waste. Upon finding no one at home at the Recchia residence, Mr. Squires spoke to an individual running a front end loader on the property and identified himself and the purpose of his visit. Mr. Squires surmised that the front end loader was covering up solid waste violations on the property. Mr. Squires then photographed the solid waste debris and trucks dumping material onto the debris. Mr. Squires did not take any debris samples upon leaving the property.
Finally, the third challenged inspection, occurring in May 2000, and again conducted by Mr. Squires, consisted of visual observations and picture taking. Again, no samples were taken from the property and Mr. Squires limited his inspection to the previously observed debris pile.
Based upon the test of reasonableness articulated by our Supreme Court in Dodd, supra, the inspection by Mr. Ashton was reasonable in scope when weighed against possible violations of public health and safety, as well as possible natural resource violations. In balancing the state interest in protecting the public's health and safety against minimal intrusions upon the defendants' property, the Court finds that these cursory and minimal inspections outweighed the defendants' interests and were reasonable and necessary in scope. Accordingly, defendants' Motion in Limine is denied.
 The Nuisance Claim
A claim for nuisance arises from the use of one's property in such a manner as to interfere with the use and enjoyment of neighboring property. Citizens For Preservation of Waterman Lake v. Davis, 420 A.2d 53
(R.I. 1980). An integral element of an actionable nuisance is that the "plaintiffs have suffered harm or are threatened with injuries that they ought not have to bear." Wood v. Picillo, 443 A.2d 1244 (R.I. 1982). A private nuisance involves a material interference with the ordinary physical comfort or the reasonable use of one's property. Iafrate v. Ramsden, 96 R.I. 216, 190 A.2d 473 (1963). Where the court finds the existence of a nuisance, a permanent injunction is the proper remedy where the withholding of such relief will harm the health and safety of plaintiffs. Wood v. Picillo, supra.
The State has offered testimony from three neighbors to the Recchia property who reside at Plainfield Valley Condominiums. All three witnesses have testified that the "rotten egg" odors have interfered with the use and enjoyment of their property. Ms. Tessier and Ms. Pesaturo have further testified that the interference has been so great on numerous occasions, they were forced to evacuate their premises. Moreover, all three residents have testified that they were unable to enjoy outdoor activities during the Summer of 2000 due to the odors. In addition, Ms. Tessier and Ms. Pesaturo have testified that they sought medical treatment because the odors interfered with their health and well-being.
Finally, Mr. Vanderslice from the Rhode Island Department of Health, concluded that the odors from the Recchia property are "adversely impacting the health of nearby residents."
Accordingly, this Court finds that the odors emanating from the Recchia property constitute a public nuisance, which in the absence of relief, will continue to unreasonably interfere with neighbors' use and enjoyment of their premises. Wherefore, the Court finds injunctive relief to be both necessary and appropriate.
 Injunctive Relief
Before a trial court will exercise its discretion to issue an injunction, the moving party must affirmatively demonstrate that it will probably succeed on the merits of its claim and that it will suffer immediate irreparable harm absent injunctive relief. In re, State Employees' Unions, 587 A.2d 919, 925 (R.I. 1991). Further, the movant must persuade the court that it has no adequate remedy at law.
Id. Significantly, the court must balance the equities between the parties: the relief which is sought versus the harm which would be visited upon the other party if an injunction were to be granted. Id. (citing R.I. Turnpike Bridge Authority v. Cohen, 433 A.2d 179, 182 (R.I. 1981); Leone v. Town of New Shoreham, 534 A.2d 871, 873 (R.I. 1987)). The court must also consider the public interest as an essential factor in connection with any such balancing equation. Id.
In order for plaintiffs to prove its likely to succeed on the merits, plaintiffs must demonstrate that the debris on the Recchia property is a form of solid waste and that said solid waste emanates objectionable odors to the surrounding area, creating a nuisance. Plaintiffs have proved through scientific evidence that the material is a form of solid waste and that said waste is the source of the objectionable odors interfering with the surrounding residents use and enjoyment of their premises. In addition, plaintiffs' have shown that the unlawful accumulation of said waste, without a license, has altered the freshwater wetlands of the Recchia property. From the overwhelming evidence before it, and the lack thereof by defendants, this Court finds that there is a reasonable likelihood plaintiffs will succeed on the merits of its claim.
Next, plaintiffs must demonstrate that it will suffer immediate and irreparable harm absent the injunction. Defendants have failed to comply with official DEM orders to abate the illegal conditions on their property. Plaintiffs have documented that the solid waste debris on the Recchia property has already been deposited within the 200 foot wetland of Simmons Brook and is more than 20 feet deep in some locations. Although the wetlands are not yet destroyed, any restoration of these wetlands will depend upon the cessation of the Recchias' illegal solid waste enterprise. In addition, DEM officials have observed trailers present on the Recchia property to "cover" the evidence of said solid waste.
Accordingly, this Court finds that plaintiffs will suffer irreparable harm in the absence of the issuance of the requested injunctive relief.
Finally, in order to grant injunctive relief, plaintiffs must prove that the balance of the equities favor said relief, while mindful of the integral role the public interest plays in such equation. Clearly, the plaintiffs have demonstrated that the health of nearby residents to the Recchia property is placed in jeopardy due to exposure to hydrogen sulfide. Accordingly, the harm that the public will suffer from the denial of the injunction clearly outweighs the harm defendants will suffer absent the issuance of the injunction.
 Findings of Fact
From the evidence proffered at hearing and drawing reasonable inferences therein, this Court makes the following findings of fact:
 (1) The testimony and evidence offered by DEM inspectors and officials is credible and reliable.
 (2) The inspection reports and testimony by DEM employees proves that the material present on the Recchia property constitutes a form of solid waste.
 (3) Defendants are in violation of G.L. § 23-18.19.5 which prohibits the disposal of solid waste at other than a facility duly licensed by DEM.
 (4) The solid waste material on the Recchia property is the source of objectionable odors to the surrounding area.
 (5) The defendants are in violation of G.L. § 2-1-21
for the unauthorized alteration of freshwater wetlands present on their property.
 (6) The subsequent remedial measures in the form of a clay cap over the subject waste does not eliminate the objectionable odors. Said odors will continue absent Court intercession.
Accordingly, this Court orders Defendants to (i) cease any further state law violations; (ii) abate existing nuisance conditions; (iii) restore the subject freshwater wetlands (iv) remove the illegally deposited solid waste.
Counsel shall prepare appropriate orders for entry.
[1] Rule 65 (2) of Super. R. Civ. P. provides in pertinent part:
 "An application for a preliminary injunction shall be heard on evidence or affidavits or both at the discretion of the court. Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."
[2] Ms. Tessier testified that she was recuperating from breast cancer surgery during this time.