DECISION
The petitioner seeks to avoid a loss of family property resulting from a tax sale. Although the petitioner-taxpayer never responded to the original foreclosure suit, her estate now seeks to vacate the default.
 Findings of Fact
Nan Aldrich was an educated woman trained as a school nurse. After 1966, she became employed as an administrator for a food distribution firm where she worked until the time of her death. Ms. Aldrich had a home, sufficient income, assets and pets. She used computers, and drove a car. Ms. Aldrich became sole owner of several properties in East Greenwich after her mother passed away in December, 1992. (Exhibits D, E.) The properties included several houses on different lots on Castle Drive in East Greenwich. In the early 1990's, Ms. Aldrich moved into the house at 38 ½ Castle Drive where she lived alone. Ms. Aldrich had one sibling, Beth Corcoran, who resided in New Hampshire, but visited occasionally.
Ms. Aldrich had several mental health concerns which were known to her family for years. Ms. Aldrich was irritable, moody, and withdrawn from her family from 2000 *Page 2 
to 2004. After 2004, Ms. Corcoran noticed that her sister's mood was constantly low. Ms. Aldrich was distraught, sometimes crying, and shaking. She stayed home, grew unkempt, and isolated.
Ms. Corcoran was reluctant to confront Ms. Aldrich. However, in July of 2006, Ms. Corcoran learned that one of Ms. Aldrich's properties had been sold at a fire district tax sale. Ms. Corcoran then became more involved, and would periodically assist Ms. Aldrich. During the summer of 2006, Ms. Corcoran traveled from her New Hampshire home every other week. They would do some errands, such as getting Ms. Aldrich's driving license restored or paying back taxes, until the tasks became too great for Ms. Aldrich.[1] Ms. Corcoran also requested the assistance of a social worker for her sister.
Ms. Corcoran recognized the problems which Ms. Aldrich had in opening mail. Ms. Corcoran described bags of mail in the house, car, recycle bins and mailbox in 2006, but added that her sister was working on this with her doctors. Ms. Aldrich signed some checks, and let Ms. Corcoran pay some bills in 2006 until Ms. Aldrich indicated that she was learning to do it herself. Ms. Corcoran was reluctant to enter into Ms. Aldrich's house, because of its filth, and would often meet Ms. Aldrich at her place of work.
By August, 2006, Ms. Aldrich was receiving mental health treatment by Dr. Jeffrey Wincze, a clinical psychologist, who had been referred because of his significant experience with anxiety disorders. During his testimony at trial he, revealed his diagnosis of Ms. Aldrich as an anxiety disorder with symptoms of hoarding. He did not find her mentally incompetent, but reported that opening and processing mail would *Page 3 
provoke panic and fear for her. During some of this time, Ms. Aldrich was being treated for depression by psychiatrists and receiving antidepressants.
By August, 2007, Ms. Aldrich showed significant improvement by traveling to her niece's wedding. That fall she continued to progress. In his report for October, 2007, Dr. Ali Kazim, a psychiatrist, described her as "doing very good and "making giant steps" with a "bright" mood. (Exhibit A.) On October 2, 2007, Ms. Aldrich refinanced her home for $127,897.37 apparently without her sister's assistance. (Exhibit B.)
Dr. Wincze treated Ms. Aldrich through October, 2007, during which time she grew to open and process mail in his office. His October 16, 2007 report states she was:
 "doing very good" Refinanced her house "making giant steps" bought computer, dishwasher, throwing things out, mail done, Bills paid . . . Stable.
Exhibit F is a portion of a medical record for Ms. Aldrich for January, 2008 which reported "improvement in her anxiety . . . She also used to panic when getting mail, but no longer."
Ms. Aldrich passed away on May 29, 2008. She had no will. Ms. Corcoran was appointed Administratrix by the East Greenwich Probate Court on June 19, 2008.
Various portions of Ms. Aldrich's property were sold at different tax sales. After a tax sale in the spring of 2003 the sale was redeemed in 2004. (Exhibit 3.) Two parcels were sold at a tax sale by the East Greenwich Fire District on July 24, 2004. (Exhibits 4 and 6.) With Ms. Corcoran's assistance, Ms. Aldrich paid the interest and penalties, redeemed her interest, and restored her title to the property in the summer of 2006. *Page 4 
On June 29, 2006 Ms. Aldrich's property at East Greenwich Plat 1, lot 106[2] was sold at another tax sale. This sale was for Ms. Aldrich's failure to pay taxes for the tax years 2003, 2004 and 2005 totalling over $12,000. The property was purchased by Amy Realty, RIGP. The Collector's Deed (Exhibit 8) establishes that notice was mailed to Ms. Aldrich at 42 Castle Street and 38 Castle Street, and advertised. The purchaser waited a year as required by statute[3], and Ms. Aldrich still failed to pay.
In the summer of 2007, Amy Realty, RIGP filed a Petition to Foreclose the Right of Redemption, (K.M. No. 07-760). Ms. Aldrich was served personally on November 27, 2007. The return of service shows she was served in hand. On April 11, 2008, this Court entered a Final Decree foreclosing all rights of redemption. There was no appeal.
On August 4, 2008, the estate filed the instant action seeking to vacate the decree which foreclosed the redemption rights. This case was tried before the Court without a jury.
 ANALYSIS AND LEGAL CONCLUSIONS
In the estate's memoranda, it raises two reasons why the decree should be vacated: First, that the recent statutory changes of 2006 "Unconstitutionally Deprived Ms. Aldrich of Her Right to Challenge the Tax Sale . . ." (Petitioner's memorandum, page 4). Second, the town, "Failed to Provide Sufficient Notice" of the 2006 sale. The Court will address each contention in turn. *Page 5 
1. The Statute.
Questioning the validity of the statutory scheme, the estate fails to address the areas of challenge expressly permitted by the statute.
 § 44-9-24. Title absolute after foreclosure of redemption — Jurisdiction of proceedings — The title conveyed by a tax collector's deed shall be absolute after foreclosure of the right of redemption by decree of the superior court as provided in this chapter. Notwithstanding the rules of civil procedure or the provisions of chapter 21 of title 9, no decree shall be vacated except in a separate action instituted within one year following entry of the decree and in no event for any reason, later than one year following the entry of decree. Furthermore, the action to vacate shall only be instituted for inadequacy of notice of the petition amounting to a denial of due process or for the invalidity of the tax sale because the taxes for which the property was sold had been paid or were not due and owing because the property was exempt from the payment of such taxes. The superior court shall have exclusive jurisdiction of the foreclosure of all rights of redemption from titles conveyed by a tax collector's deed, and the foreclosure proceedings shall follow the course of equity in a proceeding provided for in §§ 44-9-25 — 44-9-33. (P.L. 2006, ch. 537, § 4, eff. Jan. 1, 2007). (Emphasis added.)
The statute is explicit and clear. It limits motions to vacate to instances where there has been either "inadequacy of the notice of the petition" or where the sale was invalid because taxes were not due. The estate questions neither. It never questions that the taxes were due, nor does it dispute that Ms. Aldrich received notice of the petition, in hand.[4] There is no evidence that Ms. Aldrich responded in any way to this formal notice. She did not file an answer even though a deadline was established within the citation. There is no indication that a redemption payoff amount was requested. Instead, *Page 6 
Ms. Aldrich did nothing. This action was not filed until after the Final Decree entered in April of 2008, and Ms. Aldrich passed away.
The importance of the statute should not be ignored. Our Supreme Court has recently stressed the priority of the General Assembly, and the limited role of the coordinate judicial branch in construing a statute:
 Having made that determination as to the statute's unambiguous meaning, our role is at an end; we have no constitutional authority to extend the scope of this or any other statute. Citizens for Preservation of Waterman Lake v. Davis, 420 A.2d 53, 57 (R.I. 1980) ("It is well settled that when the language of a statute is clear and unambiguous, the statute may not be construed or extended but must be applied literally."). . . .; see also Simeone v. Charron, 762 A.2d 442, 448-49 (R.I. 2000) ("[T]his Court will not broaden statutory provisions by judicial interpretation unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute."); Sindelar v. Leguia, 750 A.2d 967, 972 (R.I. 2000) ("[O]ur assigned task is simply to interpret the Act, not to redraft it * * *."); see generally Dodd v. United States, 545 U.S. 353, 359-60, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005) ("It is for Congress, not this Court, to amend the statute if it believes that [the statutory language leads to undesirable consequences]."); . . .The role of the judicial branch is not to make policy, but simply to determine the legislative intent as expressed in the statutes enacted by the General Assembly. . . . Chambers v. Ormiston 935 A.2d 956, 965-966
(R.I. 2007).
As § 44-9-24 is clear and free of ambiguity, the Court will not infer additional
language or additional remedies into it.
2. The Constitutional Challenge.
In asserting Ms. Aldrich's rights of due process, the estate appears to assert that the statutory scheme is infirm. If it is doing so, it fails to allege that the statute is unconstitutional in itself, or as applied. Notice was never provided to the Rhode Island Attorney General that the constitutionality of the statute is being challenged, if it is being challenged. (Super. R. Civ. P. Rule 24(d)). *Page 7 
To determine if the statute as applied to the case at bar affords the constitutionally required due process, the Court views an extensive, established line of case law. In Fuentes v. Shevin, 407 U.S. 67,32 L.Ed.2d 556, 92 S.Ct. 1983 (1972), the United States Supreme Court struck down prejudgment replevin statutes as they failed to provide for predeprivation notice and opportunity to be heard. Fuentes was deprived of her gas stove and other appliances as a result of language in a form conditional sales contract. The Court required that property holders be given an opportunity for a hearing before being deprived of a significant property interest except in extraordinary situations.Id. at 82.
In 1991, the high court invalidated a Connecticut statute that permitted ex parte, prejudgment attachments of real estate in personal injury actions. Connecticut v. Doehr, 501 U.S. 1, 115 L.Ed.2d 1, 13,111 S.Ct. 2105 (1991). Borrowing from Matthews v. Eldridge, 424 U.S. 319,343-44, 47 L.Ed.2d 18, 96 S.Ct.893 (1976), the Court adopted a formal test (hereinafter "the Doehr test") for analyzing the sufficiency of the prejudgment deprivation:
 [T]he relevant inquiry requires, . . . first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, . . . principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or foregoing the added burden of providing greater protections. Doehr, 501 U.S. at 11.
Under the first prong of the Doehr test, the Court considers the private interest affected. There is no question that Ms. Aldrich possessed a substantial and sufficient property interest in her real estate.
The second prong is also clear. Doehr suggests "an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of *Page 8 
additional or alternative safeguards." Doehr at 11. In this case at bar, any deprivation could have been challenged at a prompt Superior Court hearing, prior to the complete loss of title to the property. Service of process was effectuated on Ms. Aldrich prior to the foreclosure of her right of redemption.[5] § 44-9-27 A citation issued. A hearing was held, and Ms. Aldrich failed to appear.
The third prong of the Doehr test requires the court to consider the creditor's interest in seeking the prejudgment remedy with regard to the government's regulatory interest and the fiscal and administrative burdens that additional procedural safeguards would require.Doehr, 501 U.S. at 11, 111 S.Ct. at 2112. While Doehr andFuentes dealt with prejudgment attachments, the interest of Amy Realty, RIGP is much greater. At a public auction after advertisement and notice to Ms. Aldrich, Ms. Aldrich's fee simple interest in the property was conveyed to Amy Realty, RIGP. It is Amy Realty, RIGP which holds the title, while Ms. Aldrich holds the right of redemption. While the Court seeks to protect the interest of Ms. Aldrich, it cannot do so at the expense of Amy Realty, RIGP which holds a substantial interest in the title to the property. § 44-9-24 The statutory scheme for Rhode Island tax titles ensures that Ms. Aldrich had notice at two different junctures: at the collector's tax sale and then, one year later, through the Superior Court foreclosure action.
Ample safeguards, explicit in the statutes, were complied with. Ms. Aldrich received in hand notice of the petition to foreclose. Pursuant to the statutory scheme, she was entitled to question the appropriateness of the sale. Instead, she elected to ignore the foreclosure process as she had ignored the payment of her taxes. Clearly, Ms. Aldrich *Page 9 
had extensive notice, an opportunity to be heard, and even the right to restore her title by paying the taxes due. It can also be argued that another creditor's interest is at stake, that of the taxing authority. Of course, a principal goal of the statutory scheme is to ensure that past due taxes are remitted to cities and towns. Applying the third prong, this Court finds that the creditors' interests are significant.
Mindful that "unlike some legal rules, [due process] is not a technical conception with a fixed content unrelated to time, place, and circumstances," Connecticut v. Doehr, 501 U.S. 1, 19 (1991) (internal quotation marks and citation omitted), the Court finds that the statutory scheme appropriately establishes adequate procedural safeguards to comport with due process requirements. Thus, the statute satisfies the third prong of the Doehr test. The statute appropriately affords due process, and is constitutionally valid.
3. The Default.
While petitioner raises constitutional challenges to the statutory scheme, the gravaman of its actions are to vacate the default decree. While the grounds for vacating such a decree are expressly set forth in statute, the estate seeks the equitable power of the court. Even if the Court were to resort to equity, the court would look to established precedent.[6] *Page 10 
Super. R. Civ. P. Rule 60(b) enumerates the criteria for vacating a default judgment. It is not clear what, if any, specific ground the estate is relying upon, but the estate has failed to show a meritorious defense or excusable neglect.
While the estate questions the statutory provision for notice of the sale, it never established that Ms. Aldrich was entitled to notice at 38 1/2 Castle Street. Section 44-9-1 liberally allows certified mail to her home address if she asked the assessor to change her billing address orif she listed another address on her deed to the address so listed.[7]
There is no evidence that Ms. Aldrich made such a request. A tax collector cannot be expected to personally know the thousands of property owners in the town. Requiring a property owner to inform the assessor of an address change is reasonable.
The estate also failed to establish that Ms. Aldrich did not receive actual notice of the sale itself. Notice was placed in the newspaper, and certified mail was delivered to *Page 11 
two homes on her property. Ms. Corcoran learned of the sale promptly thereafter. In the face of all of this, the Court will not conclude that Ms. Aldrich did not receive actual notice, nor will it exercise its equity jurisdiction.
The default was justified, and the final decree was appropriate.
 CONCLUSION
For the reasons stated, the estate's request to vacate the default decree is denied. Judgment shall enter for the respondent, Amy Realty, RIGP.
[1] Ms. Aldrich had not paid her income taxes for several years, let her insurance lapse, and utility bills were behind.
[2] This sale is the subject of this dispute. It apparently involves several of the buildings at Castle Street including 38 and 42, but not Ms. Aldrich's home at 38 ½ Castle Street.
[3] Pursuant to Chapter 44-9 of the Rhode Island General Laws, the purchaser needed to wait one year to foreclose Ms. Aldrich's interest through a court action. Before that occurred, Ms. Aldrich could have redeemed her interest by paying the balances due.
[4] The estate questions the adequacy of notice of the 2006 sale, not service of the 2007 suit. The administratrix infers that Ms. Aldrich was incapable of accepting service although she was never declared incompetent. In fact, by the time she was served in November of 2007 she had refinanced her home, and traveled to a family wedding. Petitioner's witnesses agree her situation was improved, and she was processing her bills and paperwork on her own.
[5] Even prior to the tax foreclosure suit, Ms. Aldrich could have redeemed her interest completely, through the tax collector, simply by paying the past taxes due, with certain penalties set by statute. § 44-9-29
[6] Just three months ago, our Supreme Court issued a Decision, a tax foreclosure dispute, affirming an order which vacated a forfeiture.Pleasant Management, LLC vs. Carrasco, 960 A.2d 216 (2008). That case is patently distinguishable from the case at bar. In PleasantManagement, petitioner's attorney told the homeowners to "forget about court" after settlement checks were sent. Petitioner's attorney communicated this directly to the homeowners although they were represented by counsel. Petitioner's attorney then appeared in court and obtained a final decree. Our high court found petitioner's questionable conduct justified vacating the decree. In the case at bar, however Amy Realty, RIGP is accused of no wrongdoing. Instead, the Estate seeks leniency alleging because of Ms. Aldrich's alleged affliction.
[7] § 44-9-10. Notice of sale to taxpayer.— (a) Whether or not the person or general partnership to whom the administration is taxed as of December 31st prior to the tax sale is a resident of this state, the collector shall, in addition to the foregoing, notify the taxpayer of the time and place of sale first by first-class mail not less than ninety (90) days before the date of sale or any adjournment of the sale, and again by certified mail not less than forty (40) days before the date of sale or any adjournment of the sale, sent postpaid to the street address of the real estate liable for payment of taxes, and, if different, to the taxpayer's address listed with the tax assessor's office of the city or town where the real estate is located or to any other address which the taxpayer designates by written notice to the tax assessor, or to the address of the taxpayer stated on the deed recorded in the land evidence records of the city or town where the real estate is located or to the last known address of the taxpayer or be left at the taxpayer's last known address or personally served on the taxpayer not less than thirty (30) days before the date of sale or any adjournment of the sale, but no notice of adjournments shall be necessary other than the announcement made at the sale. Copies of such notices shall also be sent or hand delivered at the same time as prescribed above, to the Rhode Island Housing and Mortgage Finance Corporation. Failure to notify the Rhode Island Housing and Mortgage Finance Corporation as prescribed herein shall nullify any tax sale of any property with respect to which such notice was not given. (b) Persons aged sixty-five (65) years and over or persons suffering from a disability may designate a third party to whom notice may be sent as required pursuant to this section by advising the tax assessor of the name and address of the person. (c) . . . P.L. 2006, ch. 537, § 3, eff. Jan. 1, 2007.